INDUSTRIAL FINANCE CORPORATION *vs.* STATE TAX
COMMISSION
(and four companion cases[1]).

Suffolk.    December 3, 1974. — April 9, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Securities corporation. *Statute,* Construction.

A corporation making secured and unsecured loans represented by
promissory notes held to evidence its loan transactions and not
for investment purposes was not a securities corporation as defined
by G. L. c. 63, § 38B, as amended by St. 1962, c. 756, § 7, and
St. 1966, c. 698, § 60, and therefore did not qualify for the favor-
able excise tax treatment accorded such corporations under the
statute.    [362-367]

APPEALS from decisions of the Appellate Tax Board.

*Joel A. Kozol* for the taxpayer.

*Kenneth A. Behar,* Assistant Attorney General, for the
State Tax Commission.

TAURO, C.J.    These are consolidated appeals of the
Industrial Finance Corporation (the taxpayer) and Mer-
ritt, Chapman and Scott Corporation,[2] pursuant to G. L.

---

[1] One of the companion cases is by Industrial Finance Corporation
and three are by Merritt, Chapman and Scott Corporation.

[2] Merritt, Chapman and Scott Corporation is Industrial Finance
Corporation's successor in interest through successive mergers.
During the taxable years here in question, Industrial Finance Corpo-
ration was a wholly owned subsidiary of Merritt, Chapman and Scott
Corporation.   The Merritt, Chapman and Scott Corporation paid the
tax assessed for three of the taxable years and has joined the
consolidated appeals as a party appellant.   For convenience, how-
ever, we refer to Industrial Finance Corporation as "the taxpayer" in
the text below and omit reference to the Merritt, Chapman and Scott
Corporation.

c. 58A, § 13, as amended through St. 1969, c. 692,[3] from decisions of the Appellate Tax Board (the Board) denying abatements of corporate excise taxes paid under G. L. c. 63, § 32, for the taxable years 1963 through 1967.

The taxpayer is in the business of lending money. Its loans, represented by promissory notes, range in amount from $2,000 to over $1,000,000 and are made for personal and business purposes. Some of the notes are unsecured. The collateral for secured notes consists, inter alia, of real estate mortgages, chattel mortgages, assignments of accounts and pledges of stock.

In each of the taxable years in question, the taxpayer[4] filed timely applications with the Commissioner of Corporations and Taxation (Commissioner) for classification as a domestic securities corporation entitled to favorable tax treatment under G. L. c. 63, § 38B.[5] Each of the applications was denied by the Commissioner. For each of the years, the taxpayer filed corporation excise returns in which it computed the excise under G. L. c. 63, § 38B, as a domestic securities corporation. For each of the years, the State Tax Commission (Commission) gave notice to the taxpayer of its intention to assess a tax on the increased taxable net income and, thereafter, assessed an excise computed under G. L. c. 63, § 32. The assessed excises were paid,[6] and applications for

---

[3] General Laws c. 58A, § 13, has been further amended by St. 1973, c. 1114, § 5, to bring it into conformity with the new Massachusetts Rules of Appellate Procedure, 365 Mass. 844 (1974), which took effect on July 1, 1974. This appeal was claimed prior to July 1, 1974, the effective date of the statutory amendment.

[4] In 1967, Indusco Management Corporation successor to Industrial Finance Corporation, filed the application for the taxpayer.

[5] In the years 1963 through 1967, the taxpayer also requested permission to use an alternative method of computing the excise under G. L. c. 63, § 56A. This section was repealed by St. 1966, c. 698, § 69, and was not applicable to taxable years ending on and after December 31, 1966.

[6] According to the record, payments for 1967 left a balance due in

abatement were filed.[7]　Each of the applications was deemed to be denied by operation of law by reason of the failure of the Commission to act thereon prior to the expiration of six months from the date of filing.　G. L. c. 58A, § 6.　The taxpayer[8] then initiated timely appeals to the Board from such denials.　The appeals were consolidated for hearing before the Board under the formal procedure.　The taxpayer filed requests for rulings of law.　On November 1, 1972, the board issued its decisions sustaining the position of the Commission.　On November 9, 1972, the taxpayer entered a request for "Findings of Fact and Report."　The Board promulgated its "Findings of Fact and Report" on January 4, 1974.　These appeals followed.　The amount in controversy exceeds $1,000,000.

1. General Laws c. 63, § 38B, as amended by St. 1962, c. 756, § 7,[9] and St. 1966, c. 698, § 60,[10] provides favorable excise tax treatment for every domestic business corporation[11] "which is engaged exclusively in buying, selling, dealing in, or holding securities on its own behalf and not as a broker."　In these appeals, the taxpayer asks us to focus narrowly on the question whether promissory notes are securities within the meaning of G. L. c. 63,

---

excess of $35,000.　The Commission's brief indicates that the excise has been paid as assessed.

[7] Merritt, Chapman and Scott Corporation filed the applications for abatement of the excise tax assessed for 1966 and 1967.

[8] Merritt, Chapman and Scott Corporation joined in these appeals and subsequent procedural steps in the course of the appeals.

[9] The statute as amended through St. 1962, c. 560, governs the taxable years 1963-1965.

[10] The statute as amended through St. 1966, c. 698, § 60, governs the taxable years ending on and after December 31, 1966 (1966 and 1967).　St. 1966, c. 698, § 87.

[11] The 1966 amendment extends favorable excise tax treatment under G. L. c. 63, § 38B, to foreign corporations as well.

§ 38B.   This, it urges, was the sole question addressed by the Board, and is the sole question properly before this court.   If promissory notes are, indeed, such securities, the taxpayer claims that, because it exclusively dealt in and held promissory notes, it must be held entitled to an abatement of the corporate excise.   The Commission responds that the true issue is a broader question whether a corporation engaged in the taxpayer's various business activities can be classified as a security corporation under G. L. c. 63, § 38B.   The Commission argues that the Board was correct in finding that the business of the taxpayer was lending money and not holding and dealing in securities.

The Commission's formulation of the issues of the case is the correct one.   It is true that, under G. L. c. 58A, § 13, this court cannot "consider any issue of law which does not appear to have been raised in the proceedings before the board." *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph,* 334 Mass. 530, 535 (1956).   However, the broad question whether the taxpayer's activities qualified it for classification as a security corporation entitled to beneficial tax treatment under G. L. c. 63, § 38B, was raised in the Board proceedings. The reasoning of the Board in its opinion was not confined to the narrow definitional issue whether a promissory note is a security.   In reaching its decisions, the Board examined the taxpayer's business to determine if the business met the statutory requirement.   It found the taxpayer's business to be "lending money" and not "investing, reinvesting, or trading in securities."   Moreover, the taxpayer's own "Request for Rulings of Law," granted in this respect, identified the issues in the case in the same expansive vein as the Commission does: "1. The only issues raised by the evidence in this matter are: . . . (2) whether Industrial Finance Corporation was engaged exclusively in buying, selling, dealing in, or holding securities during the period 1963-1967; and (3) whether Industrial Finance Corporation is entitled to be taxed as a

security corporation in accordance with the provisions of M.G.L. Ch. 63, Sec. 38B."

2. "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Accord, *Lincoln-Sudbury Regional Sch. Dist.* v. *Brandt-Jordan Corp. of New Bedford*, 356 Mass. 114, 117-118 (1969). "Where the [legislative] intent is clear, the statute, if reasonably possible, must be construed to carry out that intent." *Commissioner of Corps. & Taxn.* v. *Assessors of Boston*, 324 Mass. 32, 36 (1949). From the legislative history of G. L. c. 63, § 38B, and commentary on that history, it is plain that a corporation such as the taxpayer which actively engaged in secondary financing[12] and making loans is not within the class of corporations intended to be benefited by G. L. c. 63, § 38B. This class of corporations includes *only* those corporations which acquire securities for investment.

Two annual reports of the Commissioner provide insight into the legislative intent in enacting G. L. c. 63, § 38B. In the annual report wherein the initial enactment of G. L. c. 63, § 38B (St. 1929, c. 359, § 1), is proposed, the Commissioner explained the need for the provision. Under the heading, "Security Investment Corporation," he urged that domestic "corporations

---

[12] The taxpayer described its principal business activity as "Business Credit Agency" and its principal product or service as "Secondary Financing" in its United States corporation income tax return. The Board commented that "[t]he term 'Secondary Financing,' according to the appellant, is used to distinguish this type of financing from permanent financing such as first mortgages. The financing rendered is in the nature of secondary, since it is for a relatively short period."

having primarily investments in securities" receive tax advantages to offset tax benefits which could be achieved by incorporation in other States and to encourage them to incorporate under Massachusetts law. 1929 House Doc. No. 14, p. 8.

In his report two years later, the Commissioner, while proposing an amendment to the law, specified those corporations within the coverage of the statute: "*Security Corporations.* — By the passage of chapter 359 of the Acts of 1929 the Legislature of Massachusetts undertook to deal with the problem of the so-called investment trust which had incorporated, and which in taxation did not lend itself to the tax laid generally against domestic business corporations under which corporation laws the security companies were obliged to incorporate, by providing that the tax on security corporations should be the same as that paid by an individual under the Massachusetts income tax law. These corporations dealing exclusively in securities for their certificate holders seemed clearly to be entitled to treatment which was accorded the individual." 1931 House Doc. No. 115, p. 3.

The commentators agree with the quoted position of the Commissioner that investment trusts which had incorporated were the intended beneficiaries of St. 1929, c. 359, § 1, and G. L. c. 63, § 38B. Philip Nichols wrote that G. L. c. 63, § 38B, benefits a "newly created class of corporations engaged in the business of buying, selling and holding securities, sometimes called 'incorporated investment trusts.'" Nichols, Taxation in Massachusetts 611 (3d ed. 1938). Accord, Barrett and Bailey, Taxation, § 842 (1961).

The incorporated investment trust supplies an investment vehicle for its stockholders. The stockholders contribute to the corporate pool of capital for investment and receive the advantages of investment diversification and expert management. See *Aldred Inv. Trust* v. *Securities & Exch. Commn.* 151 F. 2d 254, 260 (1st Cir. 1945), cert. den. 326 U. S. 795 (1945); Note, 41 Col. L.

Rev. 270 (1941). One authority has characterized the investment trust as "an agency (i.e., it may be a corporation, a common law trust . . .) by which the combined funds . . . of different participants . . . are placed in securities . . . showing a distribution of risk . . . such as to introduce the 'law of average' in protection of the principal; and which aims solely at the safe and reasonably profitable employment of the subscribed investment funds while definitely avoiding any and all of those responsibilities of control, management, finance, direction or special interest which are sometimes tied in with investment." Robinson, Investment Trust Organization and Management, 13-14 (Rev. ed. 1929). The essential function of these trusts is, thus, *investment* in portfolio securities.

Recent amendment has broadened the applicability of G. L. c. 63, § 38B. In 1966, St. 1966, c. 698, § 60, imposed a specific less onerous excise on a "regulated investment or bank holding company under the Federal Internal Revenue Code."[13] The bank holding company, which may exercise control and management responsibility, does not fit the above mentioned definition of the investment trust, but now is entitled to benefit from G. L. c. 63, § 38B. Nevertheless, the bank holding company is a company which *invests* in securities. We believe that amendments to the statute contain no indication that the Legislature intended to extend G. L. c. 63, § 38B, to corporations which do not invest in securities. We hold that to qualify under G. L. c. 63, § 38B, the corporation engaged exclusively in buying, selling, dealing in, or holding securities on its own behalf must do so for investment.

---

[13] Under the amendment, corporations engaged exclusively in buying, selling, dealing in, or holding securities on their own behalf which were *not* "regulated investment or bank holding . . . [companies] under the Federal Internal Revenue Code" paid a somewhat higher tax, not equivalent to the ordinary corporate excise assessed under G. L. c. 63, § 32.

The taxpayer is not an incorporated investment trust or other corporation whose business is making investments in securities. The taxpayer lends money in the daily course of business and obtains promissory notes to evidence its loan transactions. The taxpayer may best be characterized as a "'business that has for its object the acquisition of gain'" through daily transactions and face-to-face business dealings rather than as a "trust [or corporation] for investment" which conserves and augments capital and provides income through judicious acquisition and retention of securities. See *Williams* v. *Milton*, 215 Mass. 1, 12 (1913). Cf. *Gordon* v. *State Tax Commn.* 335 Mass. 431, 434-435 (1957). Though, in some circumstances, promissory notes may constitute "securities" under G. L. c. 63, § 38B, when held for investment by a company whose business is investment, we do not now reach that issue. The taxpayer manifestly does not hold its promissory notes for investment in the necessary sense (cf. *Barnes* v. *State Tax Commn.* 363 Mass. 589, 594 [1973]) and cannot qualify for advantageous excise treatment under G. L. c. 63, § 38B.

The decisions of the Appellate Tax Board are affirmed.

*So ordered.*