PAUL DEVEAU & others[1] vs. COMMISSIONER OF REVENUE.

No. 98-P-2257.

Suffolk. November 8, 2000. - May 2, 2001.

Present: PORADA, LENK, & DUFFLY, JJ.

*Taxation,* Income tax, Nonresident, Judicial review. *Administrative Law,*
Substantial evidence, Judicial review.

Substantial evidence supported the Appellate Tax Board's attribution of invest-
ment activities in Massachusetts to nonresident partnerships; however,
there was no evidence to support the board's determination that the
management of the investments, notes guaranteed by mortgages, done
solely in the partnerships' own behalf, rose to the level of a trade or busi-
ness generating source income taxable to the nonresident partners under
G. L. c. 62, § 5A(*a*)(1); the decision of the board was reversed. [428-431]

APPEAL from a decision of the Appellate Tax Board.

*William A. Hazel* for the plaintiffs.

*Juliana deHaan Rice,* Assistant Attorney General (*Anne T.
Foley* with her) for the defendant.

LENK, J. Seventeen nonresidents of Massachusetts (appellants)
appeal from a decision of the Appellate Tax Board (board)
upholding the denial by the Commissioner of Revenue (com-
missioner) of their applications to abate personal income taxes
for the 1988, 1989, and 1990 tax years.[2] The board ruled, based

[1]Nonresidents of Massachusetts George F. Atwood, N. Bernard Basch, Do-
minique Bell (Hoff), Robert F. Cidado, Barbara Davidman, Joseph J. David-
man, Leonard Davidman, Robert M. Girard, Michael Hoff, Herbert Hoff, Mil-
ton Hoff, George A. Levine, John R. Miller-King, Rudolph Matland, Steven
B. Oshry, Nelson R. Russell, and Leonard E. Steiner. Paul Deveau, a Mas-
sachusetts resident, was a petitioner below but is not a party to this appeal.
See n. 2.

[2]Along with the seventeen nonresident partners, six Massachusetts residents
who were partners in the partnerships filed petitions with the board. The
board's ruling provided a full abatement of the taxes assessed by the commis-
sioner against the resident partners, and they are not parties to this appeal.

on a legal position that the commissioner first asserted on the morning of the board hearing, that the appellants were engaged in a trade or business within the Commonwealth.

Prior to the board hearing, the commissioner had taken the position that income taxes were properly assessed against the nonresident appellants under G. L. c. 62, § 5A(*a*)(3), rather than under the trade or business provisions of § 5A(*a*)(1), the former providing that income effectively connected to an ownership interest in Massachusetts real property is Massachusetts source income.[3] At the hearing before the board, however, the commissioner did an about-face, and there proceeded on the theory that the appellants' partnerships were in fact engaged in a trade or business, and the partners were thus subject to taxation under G. L. c. 62, § 5A(*a*)(1), providing that income derived from or effectively connected with a trade or business within the Commonwealth is Massachusetts source income. The board so found and ruled. The appellants contend on appeal that the board improperly allowed the commissioner to argue an entirely new legal position on the morning of the hearing, and that, in any event, the partnerships were not engaged in a trade or business, and accordingly the appellants are not properly subject to taxation under G. L. c. 62, § 5A(*a*)(1).[4]

1. *Background.* a. *The partnerships.* The material facts are largely undisputed. We summarize the board's pertinent findings, supplemented as necessary by uncontroverted evidence. Each of the appellants is a nonresident of Massachusetts and a

---

[3]The Massachusetts personal income tax extends to nonresidents only to the extent that they realize items of income from sources within the Commonwealth as defined by G. L. c. 62, § 5A(*a*), as in effect prior to St. 1994, c. 195, § 22. Section 5A(*a*) states in relevant part:

"Items of gross income from sources within the commonwealth are items of gross income derived from or effectively connected with (1) any trade or business, including any employment carried on by the taxpayer in the commonwealth; . . . or (3) the ownership of any interest in real or tangible personal property located in the commonwealth."

[4]The board did not consider whether the appellants were subject to taxation under G. L. c. 62, § 5A(*a*)(3), as the commissioner had also argued at the hearing, and the commissioner does not press the point on appeal.

partner in at least one of four related partnerships (partnerships).[5] As set forth in each of the essentially identical partnership agreements, the partnerships were established for the purpose of the following:

> "engag[ing] in the business of investing the assets of the partnership in secured obligations or assets of any type or description, such as, but not limited to, notes secured by mortgages, money markets, CD's, collateral assignments, operation or disposal of foreclosed real estate, directly or in participation with others."

Mark L. Shaevel, a Massachusetts resident, was both a partner in and the managing partner of each of the partnerships and, in this latter capacity, was authorized and directed to "operate the business of the partnership[s]." Shaevel described these duties as preparing the necessary tax forms, maintaining the capital accounts, and performing ministerial duties. The partnership agreements make no provision for the managing general partner to receive additional compensation for performing his duties.

The partnership agreements require the managing general partner to enter into an exclusive management contract with Investors Management Company (IMC) allowing IMC to manage the partnerships' assets. The stated purpose of this arrangement was to allow partnership assets to be invested in a pool of funds with assets from other partnerships, thereby enabling the subject four partnerships to benefit from investment opportunities available only to larger portfolios.

Shaevel was also the sole proprietor of IMC at all relevant times.[6] IMC's business consisted not only of managing the

---

[5]Pool Fund Associates 1, Pool Fund Associates 2, Pool Fund Associates 3, and Associated Investors Limited Partnership are the partnerships at issue. Pool Fund Associates 1, 2, and 3 were established in 1986. Associated Investors Limited Partnership was established in 1959. The total cumulative capitalization of the partnerships was between $4 million to $4.5 million, and during the three tax years at issue, the total number of partners in the four partnerships together was at any one time no greater than ninety to ninety-five. Shaevel was a partner in each of the partnerships. The remaining partners were individual investors who had learned of the investment opportunity by word of mouth.

[6]From 1960 to 1985, IMC had been incorporated as a Massachusetts

partnerships' assets but also of servicing the mortgages of, and providing consulting and real property management services to, unrelated third parties. On January 1, 1986, Shaevel, both doing business as IMC and in his capacity as managing general partner of the partnerships, signed management agreements between IMC and the partnerships which provided in pertinent part the following:

> "[T]he Agent shall retain one-sixth of the net profit from its investments as a management fee and shall remit annually to the Principal five-sixths of the net profit from its investments. In the event of a loss, one-sixth of the loss shall be born by the Agent."

The management agreements identified the partnerships as the "Principal" and IMC as the "Agent."

During the years at issue, IMC invested the aggregated partnership assets by issuing loans secured by mortgages, primarily on Massachusetts real estate, and by purchasing existing mortgage-backed promissory notes. IMC did not advertise the availability of its funds to borrowers and engaged in such transactions on a word of mouth basis. The mortgages were held in the name of a nominee trust, Investors Fund Trust (IFT), which had been established in 1976.[7] IMC through IFT/Shaevel would hold the notes and receive repayment, thereby earning a return through the payment of interest. IMC distributed five-sixths of those profits to the partnerships, retaining one-sixth as its fee pursuant to the management agreements. The partnerships' only source of income during the relevant years was the interest thus derived from the notes held by IMC through IFT/Shaevel.

b. *Prior proceedings.* As nonresidents, the appellants did not file Massachusetts income tax returns for the 1988, 1989, and

corporation with Shaevel as its sole shareholder. Thereafter, IMC continued to do business with Shaevel as its sole proprietor.

[7] IMC was the sole beneficiary of IFT and Shaevel its sole trustee. When IMC dissolved as a corporation in 1985, Shaevel, then as the sole proprietor of IMC, became both IFT's beneficiary and its trustee, thereby effectively terminating the trust by the merger of legal and equitable interests.

1990 tax years. On April 16, 1992, after auditing the partnerships, the commissioner issued a notice of assessment to each of the partners for personal income taxes for the three years in question. The assessments issued in accordance with the commissioner's then view that the partnerships were not engaged in a trade or business within the Commonwealth, and that, accordingly, the one-sixth management fee paid to IMC was not deductible by the partners as a business expense. Instead, the management fee was to be included in the partners' distributive shares of the partnerships' taxable income. Further, the commissioner took the view that the appellants' partnership income was Massachusetts source income because it was effectively connected with Massachusetts real property and thus taxable under G. L. c. 62, § 5A(a)(3). The appellants timely applied for abatements of the assessed tax, which were denied by the abatement bureau for stated reasons echoing the commissioner's position.

On November 29, 1993, the appellants timely filed petitions with the board; the commissioner did not file an answer.[8] At the March 8, 1995, board hearing, the parties filed briefs. The appellants' brief reiterated and enlarged upon their earlier stated position that the tax assessed under G. L. c. 62, § 5A(a)(3), was legally untenable. In his brief, however, the commissioner abandoned the legal basis he had initially articulated to justify the assessments and asserted for the first time the view that the partnerships were engaged in a trade or business within the Commonwealth. The commissioner accordingly conceded that the previously disallowed one-sixth management fee deduction was now an allowable deduction as a business expense but contended that the appellants' five-sixths distributive share of the partnerships' income was taxable under G. L. c. 62, § 5A(a)(1).

Appellants' counsel vehemently protested the commissioner's turnabout and asked that the board refuse to consider the new legal position. The board nonetheless permitted the commissioner to proceed, stating that, "as far as the [b]oard is concerned, whatever has happened prior to today . . . [the board is] not interested in, [the board is] interested in applying

---

[8]At the time the appellants filed their petitions with the board, rule 12 of the board's rules did not require the commissioner to file an answer.

the law. . . . [T]he [commissioner] has rethought [his] position, and [he is] entitled to do that, as are [the appellants]." In its October 20, 1998, findings of fact and report issued after its June 28, 1996, decision denying the appellants' application for abatement, the board observed in a footnote that it was authorized to hear the commissioner's new argument even though it had not been contained in the pleadings, stating the following:

> "The appellants argue that the [b]oard is precluded from considering the issue of whether the partnerships were engaged in a trade or business within the Commonwealth since the [c]ommissioner did not raise the issue prior to the hearing. The [b]oard, however, is authorized to consider contentions of law when 'equity and good conscience so require' G. L. c. 58A, § 7. The [b]oard exercised its discretion to consider the issue."

The board's report also sets forth its findings and rulings that the appellants' distributive share of the partnerships' income was properly classified and taxable as Massachusetts source income under G. L. c. 62, § 5A(*a*)(1), because the appellants were engaged in a trade or business.[9]

The appellants timely docketed their appeal with this court on December 4, 1998.[10]

2. *Discussion.* "It is well established that 'a decision of the

[9]Additionally, the board found that the appellants were entitled to an abatement of the one-sixth management fee paid to Shaevel, not as a business deduction, but rather as an additional distributive share paid to Shaevel which was properly excluded from the appellants' income. Thus, the appellants received abatements for the fiscal years 1988 and 1989 equal to the tax on the one-sixth management fee. For the year 1990, however, the appellants received no abatement because they had been undertaxed as a result of the commissioner's erroneous application of the 1988-1989 tax rate of ten percent instead of the proper 1990 rate of twelve percent. Coincidentally, the commissioner's assessment was numerically correct because 10% of six-sixths of income is equivalent to 12% of five-sixths of the same income. The board's abatement of the one-sixth management fee is not at issue in this appeal.

[10]The notice of appeal in its caption identified the parties filing it as "Paul Deveau, et al." the same caption apparently employed by the parties in pleadings before the board. The body of the notice, however, makes plain that the appellants are the seventeen nonresident appellants who filed board petitions with docket nos. 215231-215277. The commissioner does not raise the arguable deficiency of notice. See Mass.R.A.P. 3(c), as appearing in 430 Mass.

board will not be reversed or modified if it is based on a correct application of the law and if it is based on substantial evidence.' " *A.W. Chesterton Co.* v. *Commissioner of Rev.*, 45 Mass. App. Ct. 702, 708-709 (1998), quoting from *Kennametal, Inc.* v. *Commissioner of Rev.*, 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998). Although the board's ruling is final as to findings of fact, we may "consider whether, as a matter of law, the board's factual findings are supported by substantial evidence." *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 601-602 (1986). "[S]ubstantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting from *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968). "A finding of the board must be set aside if 'the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary.' Significantly, we are not required to affirm the board merely on a finding that the record contains evidence from which a rational mind might draw the desired inference. Our determination must be made 'upon consideration of the entire record.' " *New Boston Garden Corp.* v. *Assessors of Boston, supra* (citations omitted). See *Tennessee Gas Pipeline Co.* v. *Assessors of Agawam*, 428 Mass. 261, 262 (1998); *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 701 (1998).

a. *The commissioner's new legal position.* The appellants maintain that the board was without authority to consider the commissioner's newly advanced theory that the partnerships were taxable under G. L. c. 62, § 5A(a)(1), because they were engaged in a trade or business in Massachusetts. That position, they argue, was not contained in the pleadings or otherwise brought to the appellants' attention in a timely manner before the day of the evidentiary hearing and runs directly contrary to the position previously taken by the commissioner to justify the challenged assessments. The appellants rely in this regard upon

1602 (1999); *Cummings* v. *City Council of Gloucester*, 28 Mass. App. Ct. 345, 349 (1990). Given this and the fact that it is apparent on the face of the notice who the parties are that seek to appeal, see *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 351 (1992), dismissal is unwarranted.

G. L. c. 58A, § 7, as in effect prior to St. 1998, c. 485, § 23, which states in pertinent part the following:

> "[T]he board shall not consider, unless equity and good conscience so require, any issue of fact or contention of law not specifically set out in the petition upon appeal or raised in the answer. At any time before the decision upon the appeal by the board or by the supreme judicial court on appeal under section thirteen, the appellee may abate the tax appealed from in whole or in part or change its determination."

The appellants contend that, because the record discloses no factual basis on which the board could have determined that equity and good conscience required it to consider the commissioner's newly advanced legal position, § 7 prohibits the board from having done so.

The pertinent language of § 7 is straightforward and plain; its application would not prompt an absurd result, and we are constrained to follow it. *Commissioner of Rev.* v. *Cargill, Inc.,* 429 Mass. 79, 82 (1999). The first sentence mandates that the board not entertain fact issues or legal arguments that the parties failed to raise in their pleadings unless the board determines that equity and good conscience require it to do so. Otherwise put, the board does not enjoy broad discretion to consider new issues whenever it wishes; it may only do so when it concludes that it must in order to serve the dictates of equity and good conscience. The board's determination of what constitutes in various circumstances the demands of equity and good conscience will ordinarily be given considerable deference on appeal, so long as the rationale for that determination is made clear and it is based on substantial evidence. See *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. at 467; *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth,* 368 Mass. 745 (1975). Here, however, the board has not made any findings, and the record viewed in its entirety is barren of any facts or circumstances to support its (implicit) determination that equity and good conscience require it to entertain the commissioner's newly advanced and significantly different legal position. We thus do not know what factors the board took into consideration and, in such circumstances, deference to the

board's self-described discretionary consideration of the new theory is not warranted.

The commissioner, however, urges that we read the second sentence of the quoted § 7 language as vesting him with the discretion to modify his position as he deems necessary at any time before "decision upon the appeal by the board or by the supreme judicial court." The commissioner's interpretation is untenable for several reasons. First, it vitiates the plain language of the just discussed preceding sentence — which applies to both the commissioner and the taxpayer — by exempting the commissioner from its application; on this view, the board could only refuse to hear issues belatedly raised by the taxpayer, while the commissioner would be free to change his position at any time. The language of § 7 does not support such an inequity. Second, the commissioner's interpretation would conflict with other provisions affecting appellate review that proscribe the reviewing court from hearing issues of law not raised in the proceedings below. See G. L. c. 58A, § 13, as in effect prior to St. 1998, c. 485, § 2; *Commissioner of Rev.* v. *New Eng. Power Co.*, 411 Mass. 418, 425 (1991). Third, there is a simple and better reading of the second sentence that avoids such problems, viz., the commissioner may allow a previously disallowed abatement in whole or in part or change his determination that a tax is due at any time before final judgment enters. The sentence does not authorize what the commissioner did here. Nonetheless, given our disposition of the substantive issue on appeal, we prescind from determining whether the board's departure from the dictates of § 7 would otherwise require reversal or remand.

b. *Trade or business.* The appellants contend that the board erred in two respects in concluding that the partnerships were engaged in a trade or business. First, the appellants contend that, because Shaevel was acting in his capacity as the sole proprietor of IMC while investing the partnerships' assets, the partnerships were not themselves engaged in any trade or business and, hence, the nonresident partners may not be taxed under G. L. c. 62, § 5A(a)(1). Second, they argue that, even if Shaevel's investment activities are attributed to the partnerships, such conduct does not rise to the level of a trade or business.

· The first contention merits only brief discussion. The board found that during the years 1988, 1989, and 1990, IMC no longer existed as a separate legal entity, a conclusion amply supported by the evidence. The partnerships were not insulated by any corporate entity from the investment activities carried out on their behalf. Instead, those activities were at all relevant times conducted by Shaevel, simultaneously the sole proprietor of IMC and the partnerships' managing partner. There was substantial evidence to support the board's attribution of the investment activities to the partnerships.

The appellants' second argument fares better. The board ruled that the partnerships, by investing partnership assets in notes secured by mortgages, were in the business of providing financing for private borrowers in the Commonwealth which generated source income taxable to the nonresident partners under G. L. c. 62, § 5A(*a*)(1). The appellants argue that this was neither based on substantial evidence nor a correct application of law. We agree.

General Laws c. 62, § 1, provides that "[w]hen used in this chapter . . . 'trade or business' shall have the same meaning as in section sixty-two of the [Internal Revenue] Code." The Supreme Judicial Court has accordingly looked to decisions under the Code that clarify when investment and other activities constitute a trade or business. "The management of one's investment, regardless of how extensive, is not a trade or business." *Rosse* v. *Commissioner of Rev.*, 430 Mass. 431, 435 (1999), quoting from *Bell* v. *Commissioner of Int. Rev.*, T.C. Memo. 1998-136 (1998). See also *Forte Inv. Fund* v. *State Tax Commn.*, 369 Mass. 786, 788 (1976). "In order to distinguish between hands-on investors and those engaged in promoting businesses, the Tax Court [has] noted that '[a] taxpayer who seeks a return from long-term investments rather than a quick sale . . . is more likely to be viewed as an investor rather than a business promoter.' " *Rosse* v. *Commissioner of Rev.*, *supra* at 435-436, quoting from *Bell* v. *Commissioner of Int. Rev.*, T.C. Memo. 1998-136 (1998).

In *Rosse, supra*, the Supreme Judicial Court concluded that the taxpayer's investment activities, conducted through his sole proprietorship "REL," and involving the provision of financial

and consulting services to startup companies and other ventures, did not rise to the level of a trade or business. The court noted that REL, which loaned money and took in interest, equity, and management fees, was not a "venture capital firm" or "business promoter" as those terms are generally understood. *Id.* at 435. Where nothing in the record indicated that the taxpayer intended quick sales of the entities in which he invested, or that his consulting and lending activities were ongoing, continuous, or regular, *id.* at 436, the taxpayer was a hands-on investor and not one engaged in the active conduct of a business.

In *Mezzanine Capital Corp.* v. *Commissioner of Rev.*, 40 Mass. App. Ct. 56, 59-61 (1996), the taxpayer was a wholly owned subsidiary of a partnership whose partners contributed pooled funds to the partnership for investment. The partnership then contributed money to its subsidiary for investment by professional advisers in small businesses in the communications industry. The principal investment vehicle used was high yield subordinated notes. The taxpayer, which never held itself out to the public as being in the business of lending money, was not, we held, an active lending business. We noted that, during the relevant period, the taxpayer did not sell its instruments, the purchases of subordinated notes were not daily events, and the notes had long-term maturities. *Id.* at 61.

In *Forte Inv. Fund* v. *State Tax Commn.*, 369 Mass. at 787-789, the court held that a trust with transferable shares whose sole activity was investing trust assets on its own behalf in stocks, bonds, and real estate was not engaged in a trade or business. The court went on to say that it was "express[ing] no opinion on the result in a situation where the taxpayer makes short term investments designed to profit from fluctuations in a securities or commodities market as opposed to making investments for the purpose of profiting from the success of the enterprises in which the taxpayer has invested." *Id.* at 789.

The situation was quite otherwise in *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360 (1975), where the taxpayer was a credit agency engaged in making loans on a daily basis in return for promissory notes with short term maturities. *Id.* at 364 & n.12, 367. The court affirmed the board's ruling that the taxpayer was in the business of lending money and not invest-

ing in securities. *Id.* at 363, 367. The court also noted that the taxpayer did not acquire the borrowers' promissory notes "for investment in the necessary sense" where it was involved in a short term, high volume, lending business. *Id.* at 367.

We discern no evidence in the record before us to support the determination that the partnerships' investment activities, done solely on their own behalf, rose to the level of a trade or business. The emphasis placed by the board and the commissioner upon the language of the partnership agreements referring to the "business" of the partnerships and requiring Shaevel to "operate the business of the partnership" is off the mark since such language is far from dispositive as to whether the partnerships are properly treated as a business for tax purposes. The cases are plain that the lending of money, without more, does not rise to the level of a trade or business. *Rosse* v. *Commissioner of Rev.*, 430 Mass. at 435. The record is barren of evidence, let alone substantial evidence, to establish that the partnerships, through Shaevel, were engaged in anything other than the management of the partnerships' own investments. Nothing suggests that the secured notes the partnerships took back were of short term maturity or that such notes were purchased on a frequent, continuous, ongoing, or daily basis.

Upon review of the entire record, we conclude that the board's ruling that the appellants were engaged in a trade or business within the Commonwealth is neither supported by substantial evidence nor a correct application of the law.

> *Decision of the Appellate Tax*
> *Board reversed.*