SATYA PALRIWALA & others[1] *vs.* PALRIWALA CORPORATION, trustee,[2] & others.[3]

No. 04-P-882.

Middlesex. March 11, 2005. - September 30, 2005.

Present: GELINAS, BROWN, & DUFFLY, JJ.

*Practice, Civil,* Notice of appeal, Special verdict. *Contract,* Performance and breach. *Damages,* Quantum meruit, Breach of contract. *Evidence,* Expert opinion.

A notice of appeal from a judgment of the Superior Court was, in the circumstances, sufficient to give fair notice of the specific individuals seeking to appeal. [667-669]

In the circumstances of the trial of an action brought by plaintiffs seeking compensation for services rendered to the defendant over two distinct time periods, there was no inconsistency in the jury's answers to special questions finding that a contract existed between the parties that had not been breached, but that the plaintiffs were nevertheless entitled to recover damages under a theory of quantum meruit for services, where none of the damage award was for services rendered during the time period that had been the subject of the contract. [669-675]

A trial court judge's exclusion of expert testimony offered by the plaintiffs in a civil action was a matter within her discretion and did not entitle the plaintiffs to a new trial. [675]

CIVIL ACTION commenced in the Superior Court Department on October 25, 1996.

The case was tried before *Wendie I. Gershengorn,* J.

*Shannon M. Fitzpatrick* (*Alvin S. Nathanson* with her) for the plaintiffs.

*John J. O'Connor* for Bijay Palriwala.

---

[1]Sushila Palriwala, Mahesh Palriwala, and Rekha Palriwala.

[2]Of the Palriwala India Foundation Property Trust.

[3]Palriwala India Foundation and Bijay Palriwala, executor of the estate of Gauri S. Palriwala. Only Bijay Palriwala, executor (to whom we will refer as the defendant), has filed a brief in this appeal, the claims against the remaining defendants having been settled. See note 5, *infra.*

Duffly, J. A jury, asked to render special verdicts pursuant to Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974), found that Satya Palriwala and his wife Sushila had provided services for Satya's older brother, Gauri S. Palriwala, and awarded two million dollars on their claim for quantum meruit damages; the trial judge, concluding that this special verdict was in conflict with the jury's finding that a contract existed between Gauri S. Palriwala and Satya and Sushila, which had not been breached, ordered judgment to issue in favor of the defendant. Judgment entered dismissing the claims of the plaintiffs Mahesh Palriwala and his wife Rekha, based on the jury's findings that a contract existed between them and Gauri S. Palriwala that had not been breached, and also that Mahesh and Rekha were not entitled to recover damages under a theory of quantum meruit.

The defendant asserts as a preliminary matter that the plaintiffs' notice of appeal was timely filed only as to Mahesh. As we will discuss, we think that it was timely as to all four plaintiffs. We conclude that the jury followed the trial judge's instructions and agree with Satya and Sushila that the special verdict in their favor on their claim for quantum meruit damages finds support in the evidence and is not inconsistent. We therefore reverse the order that judgment enter in favor of the defendant on the quantum meruit based claims of Satya and Sushila. We affirm the judgments in favor of the defendant on the claims of Mahesh and Rekha.[4]

1. *Summary of proceedings.* The plaintiffs, Satya and Sushila Palriwala, together with their son Mahesh and his wife, Rekha Palriwala, brought suit in Superior Court against Bijay Palriwala, the executor of the estate of Bijay's father (and Satya's brother), Gauri S. Palriwala (referred to here and in the pleadings as "GS," by which he was known during his lifetime). The

---

[4]The defendant filed counterclaims against Satya and Mahesh, all of which were dismissed pursuant to the jury's special verdicts. The defendant filed a cross-appeal from the dismissal of his counterclaims, but his brief does not state the nature of his challenges on appeal and advances no arguments as to any issues related to the dismissal of his counterclaims. We therefore treat as waived any challenges to the verdict that might have been made. See Mass.R. A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See also *Wescott* v. *Henshaw Motor Co.,* 275 Mass. 82, 86 (1931); *Shedlock* v. *Department of Correction,* 442 Mass 844, 866 (2004).

gist of the plaintiffs' allegations in their verified complaint is that they had each provided a variety of services, over a period of years, as requested by GS — a wealthy businessman who became increasingly more disabled from the effects of childhood polio — who promised them housing and that they would be taken care of financially if they left their homes and employment in India to come to the United States.

The complaint alleges that, on the strength of GS's promises, Satya and his wife, Sushila, moved to Massachusetts in 1979, where Satya began employment with Asiatic, one of GS's businesses; Satya and Sushila lived with GS in his apartment and took care of all of GS's needs until 1982, when they returned to India. Asked by GS to return, they did so in 1984 and provided services as requested until GS was hospitalized in October, 1992. In 1989, in reliance upon similar promises, Mahesh and Rekha left India and joined Mahesh's parents in providing services to GS. It is alleged that GS died in 1996 without making good on his promises.

Counts I through V of the plaintiffs' complaint were dismissed, upon the parties' reported settlement of those claims, before the jury began their deliberations.[5] The jury returned answers, which are considered special verdicts, on the two remaining counts against the estate: a breach of contract claim (Count VI), alleging the existence of an agreement that the plaintiffs "would move to the United States and work for and take care of GS in return for his providing for them financially," specifically $500,000, as well as a home; and a separate claim for quantum meruit recovery (Count VII), seeking "the reasonable value of [the plaintiffs'] services rendered to the decedent in reliance on his promise that he would provide for them if they left India and came to Massachusetts to work for him and

---

[5]Count I sought a declaration and Counts II through V asserted claims against the defendants Palriwala Corporation, trustee, and Palriwala India Foundation, regarding the use, occupancy, and ownership of a condominium unit located at the Esplanade condominium complex in Cambridge, in which Mahesh and his family had resided. The claims were to be dismissed in exchange for a payment to the plaintiffs in the amount of $125,000. Before the jury had rendered their special verdicts, counsel and the trial judge discussed whether this sum would be offset against any possible award of quantum meruit damages, but agreed that a determination was premature. No determination of this issue appears of record.

care for his personal needs." The complaint does not specify that Counts VI and VII were pleaded in the alternative.

Following a five-day trial, the jury reported answers to eighteen questions that had been agreed to by the parties and submitted to the jury on a joint special verdict form.[6] Questions one through thirteen govern the plaintiffs' contract and quantum meruit claims. The jury found that there were contracts between GS and the plaintiffs, but that there had not been a breach.[7] To the question, "Are the plaintiffs Satya N. and Sushila Palriwala entitled to recover damages under a theory of quantum meruit," the jury responded "Yes." As to damages under this theory the jury responded, "Two Million Dollars plus attorney's fees." Concerning the entitlement of Mahesh and Rekha to quantum meruit damages, the jury answered that they were not entitled.

After the jury were dismissed, the plaintiffs filed a proposed form of judgment based on the special verdict in favor of Satya and Sushila on the claim of quantum meruit recovery. The defendant filed a motion seeking a judgment in his favor on both the contract and quantum meruit counts, arguing that the special verdict that a contract existed that had not been breached was inconsistent as matter of law with the special verdict that Satya and Sushila were entitled to quantum meruit damages for services that had been the subject of the contract.[8] The trial judge agreed and allowed the motion, noting: "Under the case

[6]The questions were submitted pursuant to Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974), which provides in part:

"The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. . . . The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."

[7]Although, as we shall discuss, the jury heard evidence that each of the four plaintiffs performed distinct services, the complaint made no distinction among the four individuals, whereas the special questions treated Sushila and Satya as one group and Mahesh and Rekha as a second group. This may be due, at least in part, to the fact that under one view of the case that the plaintiffs sought to present, the "plaintiffs lived as a Hindu joint family." See discussion, *infra.*

[8]The defendant attempts to characterize the special verdicts as "advisory findings," and therefore not inconsistent. He suggests that the trial judge

as pled . . . the finding that a contract existed between the parties precludes a finding for plffs on quantum meruit." A judgment entered dismissing the plaintiffs' action on the merits. This appeal ensued.

2. *Discussion.* We first address the defendant's claim that only Mahesh filed a timely notice of appeal.

*The notice of appeal.* The notice of appeal at issue was filed on January 4, 2002, within thirty days from the date judgment entered on December 6, 2001. The notice sets forth as the parties appealing, "Mahesh Palriwala, et al./Plaintiffs." The defendant claims that because the notice did not also specifically name Satya, Sushila, and Rekha, it failed to give proper notice as to them, pursuant to Mass.R.App.P. 3(c), as appearing in 430 Mass. 1602 (1999) (notice "shall specify the party or parties taking the appeal"), and that, consequently, this court lacks jurisdiction over the unnamed parties' appeal. In the circumstances of this case, we think the notice sufficiently specified all four plaintiffs as appealing from the judgment.[9]

We have held that the specificity requirement of rule 3(c) is met if the notice, no matter how inartful, "gives fair notice of

instructed the jury to answer all of the questions on the special verdict form (rather than instructing that, if they answered "no" to the question whether the contract had been breached, they should not proceed to the next question regarding quantum meruit recovery), only to avoid a new trial in the event of a reversal on appeal. The record does not support the view that the questions were advisory. See also Mass.R.Civ.P. 39(c), 365 Mass. 802 (1974): "In all actions *not triable of right by a jury,* the court, except where otherwise provided by law, may upon motion frame issues of fact to be tried by a jury" (emphasis added).

[9]Even if the defendant is correct, there is another ground for permitting the plaintiffs to bring this appeal. The plaintiffs filed a motion on March 1, 2002, to amend the notice of appeal by adding the names of Satya, Sushila, and Rekha, that was allowed by a judge of the Superior Court. However, the motion was filed outside of the thirty-day extension period for filing in the Superior Court. See Mass.R.A.P. 4(c), as amended, 378 Mass. 929 (1979). Instead of acting on the motion, the Superior Court judge should have transferred it to the Appeals Court where, pursuant to Mass.R.A.P. 14(b), as amended, 378 Mass. 939 (1979), the Appeals Court or a single justice thereof may, for good cause shown, enlarge the time for filing the notice up to one year from the date of judgment. "Within that year, a party whose name was incorrectly omitted from a notice of appeal may obtain relief from an appellate court upon a showing of good cause, including an indication that he is raising a substantial appellate issue." *Cummings* v. *City Council of Gloucester,* 28 Mass. App. Ct. 345, 348 (1990).

the specific individual or entity seeking to appeal." *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 351 (1992), quoting from *Jones* v. *Oakland Scavenger Co.*, 487 U.S. 312, 318 (1988). In *DeCarolis*, we held that a notice was sufficient despite the arguably deficient caption designating the appellant as "Loyd M. Starrett, et als," where the body of the notice referred to "Loyd M. Starrett, et als., the above-named Plaintiffs" and, "LOYD M. STARRETT, et als. as they are member[s] of the ROCKPORT ZONING BOARD OF APPEALS by their attorney," appeared over the attorney's signature line. *Board of Appeals of Rockport* v. *DeCarolis*, *supra.*

Here, the notice, "Mahesh K. Palriwala, et al./ Plaintiffs," is identical to the caption used by the trial court in its judgment which refers (in the body of the judgment) by name to each of the four plaintiffs; the form of judgment had been proposed by the defendant. Additionally, the body of the notice refers to the "plaintiffs" and is signed: "PLAINTIFFS, By their attorneys." The attorneys listed are the same attorneys who filed the complaint on behalf of Satya, Sushila, Mahesh, and Rekha, and represented all four plaintiffs throughout the proceedings below. From these circumstances we think that it would be readily apparent to the defendant that "et al." and "plaintiffs" refer to all

A single justice of this court denied the defendant's motion for an order dismissing the appeal of Satya, Sushila, and Rekha, in effect allowing the plaintiffs' motion to amend the original notice that had been filed within a year of the judgment. That the single justice order issued more than a year after the entry of judgment does not alter the fact that the motion was timely if deemed to have been filed in the Appeals Court. Cf. *Jones* v. *Manns*, 33 Mass. App. Ct. 485, 490-493 (1992) (appeal timely where it was claimed within one-year period during which single justice of this court had the authority to allow a late appeal). As we said in the *Jones* case, where the parties lodged an appeal in the wrong court: "In such a situation the appeal is not necessarily to be regarded as a nullity." *Id.* at 490. Rather, "in a proper case, on a showing of excusable neglect and a meritorious appeal, . . . the Appeals Court, acting under 'the broad powers of the appellate courts' with respect to appeals, . . . should be able to order a pending appeal transferred to the Appeals Court in a case where this court has jurisdiction to entertain it." (Citations omitted.) *Id.* at 490-491. We think that where a motion to enlarge is filed in the wrong court (like an original appeal claimed in the wrong court), "[w]e can treat the single justice's order as one under rule 14(b), because its plain intent was to enable the [plaintiffs] to bring to this court their appeal from the order of dismissal." *Id.* at 493 n.11.

four plaintiffs in the original complaint. Thus, "[t]he body of the notice . . . makes plain" who the appellants are. *Deveau* v. *Commissioner of Rev.*, 51 Mass. App. Ct. 420, 425 n.10 (2001).[10]

This case is unlike *Torres* v. *Oakland Scavenger Co.*, 487 U.S. at 317-318, where the term "et al." was held not to satisfy the specificity required by Fed.R.A.P. 3(c) (1979). The named plaintiff in that case, Torres, was one of sixteen plaintiffs who had intervened in a complicated employment discrimination suit against the defendant. *Id.* at 313. The notice of appeal contained the caption "et al.," while the body of the notice named fifteen out of the sixteen plaintiffs, leaving out Torres. *Id.* at 317. See also *Garland* v. *Beverly Hosp. Corp.*, 48 Mass. App. Ct. 913, 914 n.2 (1999) (where action commenced in Superior Court named five other individuals as plaintiffs but the notice of appeal named only Joseph Garland; therefore, he was considered the only appellant). Unlike in *Torres* or *Garland*, here there was no significant omission of an appealing party in the body of the notice. The notice gave "fair notice of the specific individual or entity seeking to appeal," *Torres* v. *Oakland Scavenger Co.*, *supra* at 318, and served, in the circumstances of this case, as the functional equivalent of naming each of the parties to the appeal.

*The special jury verdict.* The parties jointly proposed the questions on the special verdict form that were submitted to the jury pursuant to Mass.R.Civ.P. 49(a). As was discussed in *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800 (1987):

> "Under rule 49(a), the jurors return answers to each question or each issue submitted to them. The jurors do not return a general verdict. The answers to the questions or issues submitted are considered a special verdict consisting of 'a statement of facts the jury have found from which

---

[10]In *Deveau*, we observed: "The notice of appeal in its caption identified the parties filing it as 'Paul Deveau, et al.' the same caption apparently employed by the parties in pleadings before the board. The body of the notice, however, makes plain that the appellants are the seventeen nonresident appellants who filed board petitions." *Ibid.*

We have reviewed the notice of appeal in that case and note that it refers, in the body, to "seventeen (17) 'nonresident' Appellants who filed petitions with Docket Nos. 215231-215277," but does not set forth the names of any appellants.

the judge determines the appropriate judgment.' *Commonwealth* v. *Licciardi*, 387 Mass. 670, 675 (1982)."

Of particular relevance to this case is the principle that, "[i]f the jury's answers can be harmonized, they must be resolved so as to harmonize them." *Solimene* v. *B. Grauel & Co., KG, supra.* See *McCue* v. *Prudential Ins. Co. of America*, 371 Mass. 659, 664 (1976), quoting from *Mayer* v. *Petzelt*, 311 F.2d 601, 603 n.10 (7th Cir. 1962) (" 'every reasonable intendment in favor of the general verdict should be indulged in an effort to harmonize' that verdict with the jury's answers to the special questions"). Indeed, if there is an inconsistency and the answers "cannot be harmonized with the evidence and the instructions," *Solimene* v. *B. Grauel & Co., KG, supra* at 800-801, the jurors must, if they have not been discharged, be instructed to reconsider their answers; if they have been discharged, "a new trial is required because it is the jurors' constitutional responsibility to resolve the facts." *Id.* at 801.[11]

The defendant correctly notes that, where a valid contract covers the subject matter of dispute, "the law need not create a quantum meruit right to receive compensation for services rendered," *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 250 (1993), but his claim that the special verdicts are inconsistent assumes that the contract and the quantum meruit based damages covered the same services provided by Satya and Sushila.

"In determining whether there is an inconsistency in the jury's answers, the answers are to be viewed in the light of the attendant circumstances, including the pleadings, issues submit-

---

[11]The defendant's motion, purporting to be filed pursuant to Mass.R.Civ.P. 58(a), as amended, 371 Mass. 908 (1977) ("upon a special verdict under Rule 49(a), . . . the court shall promptly approve the form of the judgment"), was, in effect, a challenge based on an asserted inconsistency in the special verdicts; because it was not filed until after the jury had been dismissed, the motion should not have been allowed. See *Holder* v. *Gilbane Bldg Co.*, 19 Mass. App. Ct. 214, 219 (1985) (challenge to apparent inconsistency in special verdicts must be made prior to dismissal of the jury). See also *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 573 (1986); *Adams* v. *United States Steel Corp.*, 24 Mass. App. Ct. 102, 104 (1987) (although jury answers were inconsistent as matter of law, challenge was not timely and motion for new trial was properly denied). The issue was not raised; we therefore consider whether the jury's answers resulted in inconsistent special verdicts.

ted, and the judge's instructions," *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. at 800.

We first consider "[t]he questions submitted to the jury . . . in light of the instructions given by the judge." *Id.* at 802. The judge thoroughly instructed the jury on the elements necessary to their findings on the breach of contract and quantum meruit claims and gave companion instructions to the special jury verdict form. Nowhere in her thorough and detailed instructions did the judge inform the jury that the two claims were with respect to the same services performed by the plaintiffs, or that a finding that a contract existed, which had not been breached, would preclude recovery on the basis of quantum meruit. Rather, the instructions given by the judge and those stated on the special verdict form, when viewed in the light of the parties' presentation of the case to the jury, conveyed that the action involved two counts upon which the plaintiffs could recover if the elements as to each count were met by the evidence. The jury followed the instructions regarding completion of the form and answered only those questions they were instructed to answer. See *Technical Facilities of America, Inc.* v. *Ryerson & Son, Inc.*, 24 Mass. App. Ct. 601, 605 (1987) (where jury followed instructions in answering questions and "there is a very reasonable view of the evidence which harmonizes the answers," special verdicts are not inconsistent). Cf. *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 573 n.8 (1986) ("To constitute inconsistent verdicts, it must be shown that the verdicts are based on inconsistent findings of fact"). Compare *Kavanaugh* v *Greenlee Tool Co.*, 944 F.2d 7, 9 (1st Cir. 1991) ("[I]t was unnecessary for the [trial] court to attempt a conventional reconciliation of the inconsistent verdicts" where "[a]ll of the alleged inconsistencies in the special verdicts stem from the jury's failure to comply with the written instructions on the special verdict form *and* with the companion explanations given in the charge to the jury" (emphasis original).

After answering the questions relating to the existence of a contract between GS and Satya and Sushila,[12] the jury proceeded, as instructed, to answer question six: "Are the

---

[12]To question 1, "Was there a contract between [GS] and the plaintiffs Satya N. and Sushila Palriwala," the jury answered "Yes." The form instructed

plaintiffs Satya N. and Sushila Palriwala entitled to recover damages under a theory of quantum meruit?" They were to answer this question regardless whether they found that a contract existed which had not been breached. The jury's response to question six was "yes." They then were directed to question seven, which asks the amount of damages under the theory of quantum meruit (the jury answered "two million dollars plus attorney's fees"), and eight, which asks "how much of the damages . . . are awarded for the period from 1979, when the plaintiffs Satya N. and Sushila Palriwala first came to the United States, through 1984, when they returned to India." The jury answered that none of the damage award was for this period. Based on the foregoing, "we do not perceive any inconsistency between the jury's answers, or between their answers and the judge's instructions." *DiBenedetto* v. *Commonwealth*, 398 Mass. 395, 400 (1986).

The special verdicts may also be harmonized with the evidence. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *McCue* v. *Prudential Ins. Co. of America*, 371 Mass. at 664, quoting from *Atlantic & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) (harmonization rule avoids "collision with the Seventh Amendment"). The jury's view as reflected in their special verdicts (that the case involved contracts for certain services for which there was no breach; but, for the period from 1984 through 1992, services had been rendered by Satya and Sushila, which were not the subject of the contract, entitling them to compensation) finds ample support in the evidence. " 'To constitute inconsistent verdicts, it must be shown that the verdicts are based on

---

that on a "Yes" answer the jury should proceed to answer question No. 2.

Question 2 asks whether there were two separate contracts — one from 1979 through 1984, and another from 1986 through GS's hospitalization — or a continuous contract from 1979. The jury answered "No," meaning "that there was a continuous contract from 1979." Question 2 instructed, "proceed to Question No. 3."

To Question 3, "was this contract(s) breached?" the jury answered "No." The form directed the jury to question 4 (regarding damages) if they answered "yes," but if the answer is "No," they were to "proceed to question No. 6" regarding entitlement to damages under a theory of quantum meruit.

inconsistent findings of fact. . . .' But there is a very reasonable view of the evidence which harmonizes the answers." *Technical Facilities of America, Inc.* v. *Ryerson & Son., Inc.,* 24 Mass. App. Ct. at 605, quoting from *Service Publications, Inc.* v. *Goverman,* 396 Mass. at 573 n.8.

We summarize the facts the jury reasonably could have found to support the existence of distinct services entitling the plaintiffs to potential recovery under both counts of the complaint. Satya and Sushila were living in Calcutta, India, when, beginning in 1976, GS began asking his brother if he and his wife would come to the United States to live with him and take care of him personally, and also to help him in his business, the Asiatic Company; he promised to "take care of" them if they did so. In communications with Satya, GS asked that he help with the family business in return for salary, healthcare coverage, and housing. In a separate conversation with Sushila regarding his failing health, GS said he needed her to take care of him because his health was failing and no one, including his son and daughter-in-law, was available to help him.

In 1979, Satya and Sushila moved to the United States, where they lived with GS in his two-bedroom apartment in Boston (later moving to a condominium in Cambridge). Satya worked at the Asiatic Company during the day and was paid a salary of some $25,000 per year, with occasional year-end bonuses; Asiatic also provided health-insurance benefits for Satya and his wife. This was evidence that could have supported the special verdict that a contract existed, pursuant to which Satya agreed to work at the Asiatic Company in exchange for a salary, health-care benefits, and housing, which he received.

There was also evidence that Sushila, and to a lesser degree Satya, provided companionship and extensive personal care services for GS, initially for the period 1979 to 1982. They continued, upon their return to the United States in 1984, to provide these services — but more extensively and to a degree that was more demanding than before because of GS's deteriorating health — until GS was hospitalized in 1992. Sushila ran errands for GS and performed household chores, including grocery shopping, cooking, and cleaning GS's bedroom and bathroom, as well as the rest of the apartment dur-

ing the day while GS was at work. GS usually left the house for Asiatic's offices just before noon each day. Before he left, Sushila prepared and served GS his breakfast and also prepared GS's lunch. On his return to the apartment, GS would spend a long time in the bathroom, emerging for dinner at 10:00 P.M., when Sushila would serve the dinner she had prepared, cutting up his salad for him, then serving soup and bread that she also had made, followed by vegetables prepared to his liking. After doing the dishes, Sushila nightly fixed a hot water bottle for GS to take to bed with him when he retired near midnight. As his health worsened, Sushila's chores increased. She helped him dress himself and eventually had to help him to the bathroom, often during the middle of the night. At one point she was required to give him his medicine every half hour. GS had a baby monitor installed in his room so that he could call Satya and Sushila in their room whenever he needed help. When home health care aides were eventually hired, Sushila would assist them in providing care for GS. When GS traveled to conventions, Satya and Sushila accompanied him, staying in the same room; they shopped at grocery stores and prepared foods he wanted to eat, such as fresh fruit, which Sushila would cut up for him.

When Satya came home from work in the evening, he attended to the task of responding to telexes sent to GS from vendors around the world, taking dictation from GS, and transmitting the responses to a telex machine, a task that often took two or more hours nightly. Satya also assisted GS with his personal needs, taking medicines from the medicine cabinet and bringing GS to various doctors and physical therapy appointments. Satya accompanied GS on his shopping trips, assisted Sushila with the household chores, and generally was on call to provide assistance to GS until GS retired for bed at night; as GS's health grew worse, Satya would attend to him during the night.

"It is for the jury to sort out conflicting inferences that are possible from conflicting evidence. It was error to conclude that there was no rational basis for the verdict." *Meyer* v. *Wagner*, 57 Mass. App. Ct. 494, 504 (2003). See *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 659 (1996), quoting from *Corsetti*

v. *Stone Co.*, 396 Mass. 1, 21 (1985) (The judge is not to "assess witness credibility or the weight of the evidence, but seek to determine whether there is truly 'but one conclusion as to the verdict that reasonable men could have reached' ").

The fact that the jury returned a different answer with respect to Mahesh and Rekha's entitlement to recovery under a theory of quantum meruit is not inconsistent with our conclusion that the jury's verdicts are capable of being harmonized.[13] Indeed, we think this reflects the jury's understanding of the case as involving distinct sets of services that could form the basis of recovery under both counts. Likewise, the jury found services rendered by Satya and Sushila from 1984 to a point in 1992 were subject to quantum meruit recovery, distinguishing these from contracted for services rendered for the period from 1979 to 1992.

*Dismissal of claims by Mahesh and Rekha.* Mahesh and Rekha seek a new trial on the ground that their expert's testimony was wrongly excluded. They claim that the expert would have testified that "assets of a Hindu joint family are held in common by all members, but are managed by the patriarch who has the duty to ensure that each family member gets his due," and that this testimony would have assisted the jury in understanding the cultural background of the parties and would have explained "what GS's promises of adequate compensation" meant in the Hindu joint family context. The exclusion of expert testimony was a matter within the trial judge's discretion. See *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 384 (1980); *Cronin* v. *McCarthy*, 22 Mass. App. Ct. 448, 449 (1986).

---

[13]Based on the evidence, the jury could have found that Mahesh and Rekha provided far fewer services during an abbreviated time frame, and that the services were different in scope than what had been provided by Satya and Sushila. Mahesh and Rekha did not move to Massachusetts until 1989, where they lived in a separate apartment and were parenting two children; there was no evidence that Mahesh worked for GS after working all day at Asiatic; Rekha, who attended college full-time, was less available than Sushila to provide services for GS. The evidence also reflects that Mahesh and Rekha received compensation for these services, in addition to compensation that was paid in exchange for Mahesh's work at Asiatic: GS paid private school tuition for Mahesh and Rekha's daughter and college tuition for Rekha; he gave them the use of vehicles; and, on GS's authorization, Mahesh transferred $100,000 to himself from GS's bank account.

*Conclusion.* We reverse the trial court's order for judgment dismissing the quantum meruit claims as to the plaintiffs, Satya and Sushila. We affirm the judgment insofar as it dismisses the claims of Mahesh and Rekha and the defendant's counterclaims.

*So ordered.*