MEZZANINE CAPITAL CORPORATION *vs.* COMMISSIONER OF
REVENUE.

No. 94-P-1314.

Suffolk. December 14, 1995. - February 15, 1996.

Present: JACOBS, GILLERMAN, & IRELAND, JJ.

*Taxation,* Corporation, Corporate excise, Security corporation.

Where a corporate taxpayer invested in small business subordinated debt
    instruments, the terms of which were specially negotiated with the
    management of the issuers, such negotiation did not exceed the scope of
    activities permitted by G. L. c. 63, § 38B, as in effect prior to St. 1992,
    c. 133, §§ 405-406, and as pertaining to tax years ending in 1987, 1988,
    and 1989, and the taxpayer was entitled to the favorable tax status as a
    domestic security corporation under the statute. [58-59]
The Appellate Tax Board properly concluded that a corporate taxpayer
    was not engaged in the business of lending money by investing in
    specially negotiated debt instruments of ten small businesses over a pe-
    riod of three years and that the taxpayer was entitled to the favorable
    tax treatment accorded to a domestic security corporation. [59-61]

APPEAL from a decision of the Appellate Tax Board.

*Robert J. Munnelly, Jr.,* for the Commissioner of Revenue.

*Kenneth A. Cohen* for the taxpayer.

GILLERMAN, J. For the calendar years ending in 1987,
1988, and 1989, Mezzanine Capital Corporation (taxpayer)
filed its Massachusetts tax returns and determined its tax as a
domestic security corporation, see G. L. c. 63, § 38B, as in
effect prior to St. 1992, c. 133, §§ 405-406,[1] a favorable status
granted to the taxpayer by the Commissioner of Revenue

---

[1]Section 38B is available to corporations that are "engaged exclusively in
buying, selling, dealing in, or holding securities on [their] own behalf and
not as a broker."

(commissioner) on September 25, 1987.[2] After an audit of the taxpayer's returns for the years indicated above, the commissioner assessed additional taxes and, on February 10, 1992, the taxpayer paid the Commissioner the assessed tax of $688,452, together with interest in the amount of $336,072.56. The taxpayer's timely applications for abatement of the tax assessed for each of the years in issue were denied on the ground that the taxpayer's activities did not fall within § 38B.[3]

The taxpayer appealed the commissioner's refusal to abate the assessed taxes by filing its petitions with the Appellate Tax Board (the board). See G. L. c. 62C, § 39. The board granted the taxpayer's abatement applications, and this appeal followed. We affirm the decision of the board.

The material, subsidiary facts are not in dispute. Many of those facts are set out in the agreed statement of facts signed by the parties; additional undisputed facts appear in the board's decision, which was promulgated on May 13, 1994. We summarize the facts.

The taxpayer was the wholly-owned subsidiary of Media Communications Partners (Media) whose partners contributed funds to Media for investment. Media, in turn, contributed thirty million dollars to the taxpayer for investment only in small businesses in the communications industry.[4]

The principal investment vehicle used by the taxpayer was a high-yield (10 to 16.5 per cent), long-term (greater than five

---

[2]A corporation taxable as a security corporation under G. L. c. 63, § 38B, is not subject to the corporate excise tax imposed by G. L. c. 63, § 32 or § 39. See G. L. c. 63, § 38B(c).

[3]The commissioner denied the applications on the ground that "the loans to small, non-publicly traded companies were not marketable securities and thus do not meet the requirements of Section 38B."

[4]The taxpayer qualified as a small business investment company (SBIC). See 15 U.S.C. §§ 661 et seq. (1988 ed.). The stated Congressional purpose of the Small Business Investment Act of 1958, Pub. L. No. 85-699, Title I, § 102, 72 Stat. 689 (1958), was to "stimulate the national economy . . . by establishing a program to stimulate and supplement the flow of private equity capital and long-term loan funds which small-business concerns need for the sound financing of their business operations and for their growth."

years) subordinated note.[5] The specific terms of the debt instruments were often the subject of negotiations between the taxpayer and management of the issuer.[6]

The taxpayer's funds were invested under the direction of professional advisors. The taxpayer did not invest in any businesses other than those which qualified as an investment for a small business investment company (SBIC). See note 4, *supra*. The taxpayer did not advise, manage, or control any of the portfolio companies; all inquiries and financial investigations were accomplished prior to the investment. The taxpayer never held itself out to the public as being in the business of lending money.

On these facts, the board concluded that the taxpayer "invested funds from a pool of investors, solely for investment purposes, under the direction of professional investment advisors, in the marketable securities of small businesses, and was engaged exclusively in these investment activities." The board also found "that during the relevant years . . . [the taxpayer] exercised no management or other disqualifying control over the companies in which it invested, and did not engage in the business of lending money to them. . . . Accordingly, insofar as it may be a question of fact, the board found that . . . [the taxpayer] was engaged exclusively in buying, selling, dealing in, or holding securities on its own behalf and not as a broker' and therefore was entitled to the favorable tax treatment accorded to security corporations under G. L. c. 63, § 38B for the years at issue."

*Discussion* The commissioner advances two arguments in support of his appeal: first, that by *negotiating* the terms of the subordinated notes directly with the issuer, the taxpayer exceeded the scope of the activities permitted by § 38B; and second, that the taxpayer did not acquire the subordinated notes for purposes of investment.

As to his first argument, the commissioner's brief acknowledges that he "is not arguing that specially-negotiated notes

[5]The debt instruments were either unsecured or junior to senior lenders' security interests. Interest was frequently deferred, at the option of the issuer, to the end of the term of the note.

[6]Funds for these transactions were made available through monies received from its parent corporation, Media, in the amount of thirty million dollars, and from borrowings from the Small Business Administration in the amount of twenty-five million dollars.

cannot constitute securities' within the meaning of § 38B(a), only that participation by the security corporation in negotiating the terms of a note or equity instrument is not permitted by G. L. c. 63, § 38B." Thus, the commissioner's argument continues, a security corporation may buy a specially negotiated note previously issued to another person or company, but it may not buy such a note from the issuer; and it may buy a specially negotiated debt instrument from the issuer, but only if the purchase is in response to a prospectus where the terms were negotiated by an underwriter, not by the security corporation.

This argument appears to be rooted in the commissioner's understanding of the meaning of the statutory term "buying." The term "buying," the commissioner argues, necessarily precludes any activity other than "to get possession or ownership." We see no basis for this argument either in the statute or in any appellate decision construing the statute, and reject it.

The commissioner's second argument is not so easily dismissed. There is no basis, the commissioner argues, for differentiating the activity of the taxpayer in this case from the activity of the taxpayer in *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360 (1975); both taxpayers were engaged in the business of lending money.

In *Industrial Finance*, the court emphasized that the intended beneficiaries of c. 63, § 38B, initially enacted in 1929 (see St. 1929, c. 359, § 1) were "investment trusts which had incorporated." *Id.* at 365. The court cited a report of the commissioner regarding a proposed amendment to the new statute, see 1931 House Doc. No. 115 at 3, where the commissioner observed that the Legislature had dealt with the incorporated investment trust by providing that the tax on security corporations should be the same as that paid by an individual under the Massachusetts income tax law. *Ibid.* Thus, the incorporated investment trust — the entity covered by § 38B — merely "supplies an investment vehicle for its stockholders. The stockholders contribute to the corporate pool of capital for investment and receive the advantages of investment diversification and expert management." *Ibid.*

The taxpayer in *Industrial Finance* was totally unlike either an incorporated investment trust or the taxpayer in this case. In *Industrial Finance* the taxpayer was a retail finance

company or "credit agency," see *id*. at 364 n.12, engaged in the business of making loans on a daily basis in return for promissory notes, *id*. at 367, with short-term maturities, *id*. at 364 n.12. The board specifically found that the taxpayer was in the "business . . . [of] 'lending money' and not investing . . . in securities." *Id*. at 363. A high-volume, short-term, daily lending business was most certainly not an intended beneficiary of the favorable provisions of § 38B, and the court summarized its analysis by holding that the taxpayer did not acquire the borrowers' promissory notes "for investment in the necessary sense." *Id*. at 367.

This construction of § 38B — that the securities purchased by the taxpayer must be held for investment — was again the underlying rationale in *State Tax Commn*. v. *PoGM Co*., 369 Mass. 611, 613 (1976). The taxpayer in *PoGM* took back a purchase money mortgage note solely to bring about the sale of its real estate in the course of its liquidation, and thus the taxpayer did not acquire the mortgage note for investment. The court held that *PoGM* was not a security corporation.

The *Industrial Finance* and *PoGM* cases establish the principle that a pivotal inquiry in cases arising under § 38B is whether the taxpayer acquired its securities, including debt instruments, for investment in the sense described by the court in *Industrial Finance*. In the case before us, (and in contrast to the decision of the board in *Industrial Finance*) the board concluded that the taxpayer acquired the securities held by it for investment purposes. That issue, being a mixed question of fact and law, requires us to recognize the board's expertise in tax matters, and its decisions are due "some deference." *Koch* v. *Commissioner of Rev*., 416 Mass. 540, 555 (1993). See also *French* v. *Assessors of Boston*, 383 Mass. 481, 482 (1981). With these guidelines in mind, we are unable to conclude, given the agreed statement of facts and the record support for the board's additional findings and the board's sound application of the law, that the board was in error.

Of particular importance are the following subsidiary findings of fact by the board, each of which is either undisputed or is amply supported by the evidence: the taxpayer invested funds acquired from a pool of investors; its operations were under the direction of professional investment advisors; it purchased marketable securities of qualified, carefully selected

small businesses, and it was engaged exclusively in these investment activities; during the relevant period the taxpayer did not sell any of its instruments, other than one instrument it divested to its corporate parent, at face value, after the taxpayer determined that the issuer did not qualify as a small business under Federal law; the purchases of the subordinated notes were not daily events, and the taxpayer did not hold itself out to the public as a lender; the debentures were carefully negotiated by professional investment advisors, and in every case the maturities were long-term (i.e., more than five years); the taxpayer exercised no management or other disqualifying control over the companies in which it invested. To these findings, we add the undisputed facts that the taxpayer, during the three-year period at issue, invested in only ten companies, the smallest investment being four million dollars. Purchasing subordinated notes in three selected companies a year cannot be regarded as the conduct of an active lending business. Contrast *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360.

In sum, the taxpayer was engaged exclusively in the "judicious acquisition and retention of securities," *id*. at 367, and therefore we see no basis for concluding that the board erred in granting the taxpayer's applications for abatement. The decision of the board must be affirmed.

*So ordered.*