GREENERY SECURITIES CORPORATION *vs.* COMMISSIONER OF
REVENUE.

No. 01-P-1025.

Suffolk. January 22, 2003. - May 9, 2003.

Present: DOERFER, KASS, & McHUGH, JJ.

*Taxation,* Corporate excise, Security corporation. *Words,* "Security."

The Appellate Tax Board did not err in finding a corporate taxpayer eligible
for favorable tax treatment as a securities corporation under G. L. c. 63,
§ 38B, for the years at issue, and in granting the abatement of corporate
excise taxes assessed for these years, where certain short-term notes held
by the taxpayer qualified as "securities" and were not acquired and held
for investment purposes. [73-75]

APPEAL from a decision of the Appellate Tax Board.

*Michael T. Fatale* (*John DeLosa* with him) for Commissioner
of Revenue.

*Jason W. Morgan* for the plaintiff.

DOERFER, J. The Commissioner of Revenue (commissioner)
appeals, pursuant to G. L. c. 58A, § 13, from a decision of the
Appellate Tax Board (board) granting Greenery Securities
Corporation (taxpayer or Greenery Securities) an abatement of
corporate excise taxes assessed for the tax years 1988, 1989,
and 1990.[1] The board concluded that certain short-term notes
held by the taxpayer qualified as "securities," were held for

---

[1] In 1991, the commissioner issued a notice of intention to assess corporate
excise taxes for the relevant years in the amounts of $387,853, $441,441, and
$457,467, respectively. After attempts to negotiate the matter, the commis-
sioner issued a notice of assessment in 1993, and the taxpayer promptly paid
in full. The taxpayer then filed an application for an abatement, which was
deemed denied by the commissioner six months later, no action having been
taken. The taxpayer timely appealed from the denial of the application on
October 3, 1994, and the board held the hearing on January 9, 1997. The
board decided for the taxpayer on February 3, 1998. On January 26, 2001, the

investment, and did not disqualify the taxpayer as a "security corporation" under G. L. c. 63, § 38B. Accordingly, the taxpayer was entitled to preferential corporate excise tax treatment under that statute. The specific issues on appeal are whether the close relationship between the taxpayer and the issuer of those notes vitiated their status as "securities" and whether they were held for investment purposes. We affirm.

*Statutory scheme and standard of review.* General Laws c. 63, § 38B, provides preferential tax rates to any "security corporation" which holds securities for investment purposes and engages exclusively in buying, selling, holding and trading securities on its own behalf and not as a broker. In this area, as in others, Appellate Tax Board decisions based on substantial evidence and a correct application of law will be affirmed, and the board is due some deference for mixed questions of fact and law that involve the board's expertise in tax matters. See *Koch v. Commissioner of Rev.*, 416 Mass. 540, 541-542, 555, 557 (1993).

*Findings and rulings of the board.* The board issued a detailed and well-reasoned written decision, the contents of which we summarize. The promissory notes in question were issued by Health and Rehabilitation Properties Trust (HRPT), a Maryland real estate investment trust whose stock was publicly traded on the New York Stock Exchange. HRPT was originally organized in 1986 for the purpose of providing financing, through mortgage loans and sale-leaseback transactions, to unrelated health care facilities, including nursing homes and retirement facilities. The notes were indicia of indebtedness, and were either short-term or payable on demand.

The taxpayer was a wholly owned subsidiary of Greenery Rehabilitation Group, Inc. (Greenery Group). The Greenery Group was a publicly traded, widely held corporation, with its shares listed on the New York Stock Exchange. It principally engaged in operating nursing homes and other health care facilities, either directly or through wholly owned subsidiaries.

The business of the Greenery Group required ready access to large amounts of capital for corporate expansion. Such capital

board released its findings of facts and report. A motion for reconsideration was denied; this appeal followed.

resources had been accumulated and were on hand in varying amounts over time. It was prudent to invest in short-term securities so that its cash reserves could be employed productively when not immediately needed, but in a way that permitted Greenery Group to remain relatively liquid. The taxpayer was formed as a vehicle to invest these cash reserves and to hold such short-term securities for the use of Greenery Group in order to avoid substantial excise taxes otherwise due on the accumulated capital.

Prior to and during the tax years in question, HRPT and the Greenery Group were involved in various business dealings. For example, Greenery Group and its subsidiaries received financing from HRPT for various transactions; they were a client of HRPT's lending operations. Two individuals served on the boards of both the Greenery Group and HRPT during this period. They abstained from voting on transactions between the two entities or their subsidiaries.

Greenery Group learned that HRPT needed to borrow money in the short term. During the periods in question, Greenery Securities had cash to invest in short-term instruments, and advanced the funds for the acquisition by Greenery Group of the three HRPT promissory notes at issue.[2] These notes shared the following characteristics: stated or determinable interest rates at or above the market rate for such short-term paper; monthly payment of interest; stated or determinable maturation dates; and principal and interest payments made to the taxpayer, who held the notes. The notes were fully paid on or before maturation.

The acquisition of the notes served the purpose of providing a vehicle for investing in short-term securities. Greenery Securities did not acquire any right to control HRPT as a result of

---

[2]The amounts and execution dates of the three notes were: $14.5 million in December, 1987; $5 million in March, 1989; and $20 million in September, 1989. Only the smallest note matured on demand and was unsecured; the others were secured by assignment of HRPT's mortgage loan receivables.

There was evidence to support the board's finding that these notes were paid for and held by Greenery Securities, even though Greenery Group may have been involved in the negotiations resulting in the initial acquisition of the notes. It is undisputed that the funds to purchase the notes came from Greenery Securities, that Greenery Securities held the notes, and that interest and principal were paid to Greenery Securities.

these acquisitions. The board's decision recited testimony, which the board evidently credited, that the practice of investing in this type of short-term commercial paper is an accepted and customary method of investment of funds by a business, which allows the business to avoid the commercial financial markets, and that the demand feature of one of the notes (see note 2, *supra*) was not unusual and gave the investor flexibility.

The board ruled that the notes in question qualified as "securities" for the purposes of G. L. c. 63, § 38B, and that Greenery Securities, acting on its own behalf and not as a broker, acquired and held them for investment purposes. Accordingly, the board found and ruled that Greenery Securities was a "security corporation" under G. L. c. 63, § 38B, and entitled to the tax benefits of that statute. The commissioner argues that in so ruling, the board erred as matter of law.

*Two-prong test for qualifying as a securities corporation.* The parties agree that, to maintain its qualification as a securities corporation,[3] (1) instruments held by the corporation must be "securities," and (2) the securities must be acquired and held for investment purposes. See *State Tax Commn.* v. *PoGM Co.*, 369 Mass. 611 (1976). Additionally, only if the corporation is engaged exclusively in statutorily prescribed investment activities may it qualify as a securities corporation. *Chatham Corp.* v. *State Tax Commn.*, 362 Mass. 216, 219 (1972). *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975). *State Tax Commn.* v. *PoGM Co.*, *supra.*

*Security.* The term "security" is not defined in G. L. c. 63, § 38B. In analyzing the meaning of a statutory term, it is permissible, as the board observed, to consult sources presumably known to the Legislature, to consider the use of the term in other legal contexts, and to consider dictionary definitions. See *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). The term "security" is defined in the Uniform Securities Act as including "any note; stock; treasury stock; bond; debenture; evidence of indebtedness." G. L. c. 110A, § 401(*k*). Webster's Third New International Dictionary 2054 (1993), defines security as encompassing "a written obligation, evidence, or

---

[3]We use the phrase "securities corporation" interchangeably with "security corporation," the statutory term.

document of ownership or creditorship (as a stock, bond, note, debenture, or certificate)." See *Commonwealth* v. *Baker*, 368 Mass. 58, 69-70 (1975) (describing a security as an investment in some private or public business enterprise that is salable in some recognized if limited commercial market and is generally negotiable). These notes are covered by such definitions.

Every note is presumptively a security. *Reves* v. *Ernst & Young*, 494 U.S. 56, 65 (1990). The commissioner has cited no authority that a short-term note may not be a security. Here, where issued by a publicly listed, creditworthy corporation, the notes in question were marketable, negotiable investments. They carried market rate interest for short-term securities, payable currently, and were salable and transferable in a commercial market. The board properly found that these notes were securities.

*Acquired and held for investment purposes.* In the case before us (and in contrast to the decision of the board in *Industrial Fin. Corp.* v. *State Tax Commn.*, *supra* at 367), the board concluded that the taxpayer acquired the securities held by it for investment purposes. It saw Greenery Securities as existing solely for the productive application of its parent's capital, through the vehicle of short-term, interest-bearing investments, and noted that it was not a retail finance company or credit agency or bank making daily loans in return for short-term promissory notes. Whether the securities were held for investment purposes was a mixed question of fact and law, and recognizing the board's expertise in tax matters, its decisions are due "some deference." *Mezzanine Capital Corp.* v. *Commissioner of Rev.*, 40 Mass. App. Ct. 56, 60 (1996), quoting from *Koch* v. *Commissioner of Rev.*, 416 Mass. at 555.

Likewise, this case is different from the taxpayer's situation in the *PoGM* case, in which the court reversed the board, holding that a mortgage note taken to effect and finance the sale of PoGM's real estate, even though it might be a security, was not a security that the taxpayer bought and held exclusively for investment purposes. *State Tax Commn.* v. *PoGM Co.*, 369 Mass. at 613. We also defer to the board's conclusion that Greenery Securities did not acquire HRPT's notes to support some independent business purpose, but rather solely to earn

interest and augment capital. See *Mezzanine Capital Corp.* v. *Commissioner of Rev., supra.*

While HRPT and Greenery Group shared two members of their boards of directors and had prior business dealings (which were substantially removed in time from the notes in question), neither those facts nor the record as a whole invalidates the investment purpose that Greenery Securities had for its acquisition of the commercial paper at issue. In *Mezzanine Capital,* we also rejected the proposition that a security company (or its parent) is precluded from negotiating with the issuer the terms of its investments. *Mezzanine Capital Corp.* v. *Commissioner of Rev.,* 40 Mass. App. Ct. at 58-59.

Greenery Securities met its burden of proof with regard to these notes being securities and its holding them for investment purposes. There was no indication in the record that the taxpayer engaged in any activities other than buying, selling, and holding securities on its own behalf. See *Chatham Corp.* v. *State Tax Commn.,* 362 Mass. at 219. We do not think the board erred in finding the taxpayer eligible for favorable tax treatment as a securities corporation for the tax years at issue, and in granting the abatements; its findings were based on substantial evidence, and its inferences therefrom and application of the law were sound.

*Decision of the Appellate Tax
Board affirmed.*