## John Silvia, Jr. *vs.* Securities Division.

No. 02-P-785.

Bristol. January 5, 2004. - June 21, 2004.

Present: Beck, Grasso, & Cowin, JJ.

*Secretary of the Commonwealth. Uniform Securities Act. Securities,* Sale, Registration of broker-dealer. *Administrative Law,* Substantial evidence.

The Securities Division of the Secretary of the Commonwealth had jurisdiction to charge the plaintiff with violations of G. L. c. 110A, §§ 101, 102, 201, and 301, in connection with the plaintiff's entering into certain agreements that, in exchange for a sum of money, promised the investor either the return of the principal on demand or rights to a specified number of shares of stock in a particular company, where the agreements constituted securities within the meaning of G. L. c. 110A, § 401(*k*), in that the various parties entered into the agreements in order to achieve investment goals; the agreements were broadly distributed, with the potential for the development of a market for them; the agreements were marketed and acquired as investment opportunities; and absent regulation, the agreements lacked any risk-reducing factor. [355-358]

In a civil action seeking judicial review of the conclusion of the Securities Division of the Secretary of the Commonwealth (division) that the plaintiff had wilfully violated G. L. c. 110A, §§ 101, 201, and 301, the judge properly entered judgment affirming the division's decision, where the division's determination that the plaintiff violated the provisions of G. L. c. 110A with respect to the selling or offering of certain agreements that constituted securities as a matter of law was supported by substantial evidence. [358-359]

In a civil action seeking judicial review of the conclusion of the Securities Division of the Secretary of the Commonwealth (division) that the plaintiff had wilfully violated G. L. c. 110A, §§ 101, 201, and 301, there was no merit to the plaintiff's contentions that the division exceeded its authority in setting aside a consent order and reinstating an administrative complaint [359-360]; that the division was required to refer the matter to the division of administrative law appeals for hearing [360]; that the hearing officer abused her discretion in scheduling the hearing, and that the plaintiff was prejudiced by the scheduling [360-361]; or that the plaintiff was entitled to access to the division's investigatory file [361].

Civil action commenced in the Superior Court Department on August 15, 1997.

The case was heard by *Elizabeth M. Fahey*, J., on a motion for judgment on the pleadings.

*John Silvia, Jr.*, pro se.

*Juliana deHaan Rice*, Assistant Attorney General (*Timothy R. McGuire*, Assistant Attorney General, with her) for the defendant.

Cowin, J. The Securities Division (division) of the Secretary of the Commonwealth (Secretary) charged the plaintiff with violations of G. L. c. 110A, §§ 101,[1] 102,[2] 201,[3] and 301,[4] in the following respects: transacting business in securities without being registered as a broker-dealer or agent; offering and selling securities which were not registered or exempt under the Massachusetts Uniform Securities Act (Act); and misstating or fail-

---

[1]General Laws c. 110A, § 101, states: "It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

[2]General Laws c. 110A, § 102, as in effect at the time of the plaintiff's activities, stated: "It is unlawful for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise (1) to employ any device, scheme, or artifice to defraud the other person, or (2) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person." Section 102 was amended effective June 28, 2002. See St. 2002, c. 74, § 1. The amendment is not material to the outcome of this case.

[3]General Laws c. 110A, § 201, as in effect at the time of the plaintiff's activities, provided in relevant part: "(*a*) It is unlawful for any person to transact business in the commonwealth as a broker-dealer or agent unless he is registered under this chapter. (*b*) It is unlawful for any broker-dealer or issuer to employ an agent unless the agent is registered . . . . (*c*) It shall be unlawful for any person to transact business in this state as an investment adviser or as an investment adviser representative unless he is so registered under this chapter." Section 201 was amended effective June 28, 2002. See St. 2002, c. 74, § 2. The amendment is not material to the outcome of this case.

[4]General Laws c. 110A, § 301, as in effect at the time of the plaintiff's activities, stated: "It is unlawful for any person to offer or sell any security in the commonwealth unless (1) it is registered under this chapter or (2) the security or transaction is exempted under section 402." Section 301 was amended effective June 28, 2002. See St. 2002, c. 74, § 7. The amendment is not material to the outcome of this case.

ing to state material facts in connection with the offer and sale of a security. A division hearing officer concluded that the plaintiff had wilfully violated §§ 101, 201, and 301 of G. L. c. 110A, and recommended that he be ordered permanently to cease and desist violating the Act; provide a full accounting to the division with respect to investor funds; and offer rescission to all investors. The hearing officer's recommended decision was adopted by the acting director of the division as a final order, and the plaintiff filed a complaint for judicial review in the Superior Court pursuant to G. L. c. 30A. Following certain discovery with respect to alleged conflict of interest on the part of the hearing officer, a Superior Court judge denied the plaintiff's motion for judgment on the pleadings, and entered judgment affirming the division's decision. The plaintiff filed a timely notice of appeal.

The plaintiff's principal contention is that he sold what was essentially a convertible demand promissory note that does not constitute a "security" as that term is defined in G. L. c. 110A, § 401(*k*). If so, it follows that he could not be liable for violating statutory provisions governing transactions in "securities." In addition, the plaintiff contends that the findings of the hearing officer, adopted by the division, are not supported by substantial evidence; challenges the reopening of an earlier consent order on the subject that he had negotiated with the division; asserts that the matter should not have been heard by a hearing officer employed by the division; and alleges that certain procedural violations affected the outcome. We conclude that the promissory notes sold by the plaintiff are "securities" for regulatory purposes. Determining that no other errors affected the proceeding, we affirm.

1. *Background.* Except as indicated otherwise, the following material facts are not disputed. Environmental Recovery Systems of Somerset, Inc. (ERSS), a subsidiary of Environmental Recovery Systems, Inc. (ERS), was incorporated in 1990 for the purpose of recycling municipal trash. ERS subsequently conveyed stock of ERSS to Caside Associates, a general partnership of which the plaintiff, an attorney, was managing partner. The plaintiff served as well as trustee of Recycling Associates Trust, another partner of Caside Associates. It is the plaintiff's

sale to outside investors of interests in the ERSS stock held by Caside Associates that is the subject of these proceedings.

From 1990 through early 1995, the plaintiff entered into more than 300 agreements, most denominated "Promissory Note, Security, and Assignment Agreement" (agreement), with outside investors. In return for payments ranging from $5,000 to more than $100,000, the agreements promised the investors either the return of their principal on demand, with a favorable interest rate, or rights to a specified number of ERSS shares. The value of ERSS shares on the market would be proportional to the success of the ERSS recycling operation. There was evidence, and the hearing officer so found, that the plaintiff predicted that there would be considerable growth in the ERSS stock as a result of the company's projected success. At a minimum, the plaintiff committed to the investors that they would receive, on demand, their investments together with the promised interest thereon.[5]

By December, 1992, ERSS had to date been unsuccessful, and was not sufficiently liquid to repay investors on demand. Despite this, the plaintiff continued to issue agreements to new investors on the same terms. The plaintiff resisted investors who demanded return of their funds, writing bad checks on several occasions. While some investors were eventually repaid, many were not.

The plaintiff has not, at any time, been licensed in the Commonwealth as an agent, broker-dealer, or investment adviser pursuant to the Act. Likewise, the agreements with investors were never registered as securities in Massachusetts under the Act.

Administrative proceedings in this case commenced when the division's enforcement section, on December 12, 1995, filed an administrative complaint with the division alleging the offering and sale by the plaintiff of unregistered securities; the offering and sale of securities by the plaintiff when he was not registered as a broker-dealer or agent; and the misrepresentation or omis-

---

[5]There was evidence that the plaintiff raised close to $10 million in this fashion. The hearing officer found that not all of the funds found their way to ERSS, a certain amount being diverted by the plaintiff to pay personal obligations and to pay fees to his law firm.

sion of material facts in connection with such offerings and sales. On January 7, 1997, the plaintiff and the division entered into a consent order that, inter alia, required repayment by the plaintiff to all investors on or before February 14, 1997. When the plaintiff failed to make the required repayments, a division hearing officer, on motion by the enforcement section, vacated the consent order and reinstated the administrative complaint.

Administrative hearings, scheduled to commence on March 24, 1997, were postponed several times. They eventually began on May 6, 1997, after the plaintiff's request for a further continuance was denied. Hearings were conducted on May 6, 8, and 9, 1997, with the plaintiff represented by counsel throughout. Although the plaintiff asserted his privilege against self-incrimination when called to testify by the enforcement section during its case-in-chief, he was permitted to testify, and did so at length, during his own case. In a recommended decision, the hearing officer found that the plaintiff had repeatedly violated various provisions of G. L. c. 110A. This was accepted by the acting director of the division, who ordered that the plaintiff permanently cease and desist from further violations of the Act; provide the division with a full accounting of investors' funds; and offer rescission to all investors.

As we have stated, the plaintiff submitted a timely request for judicial review of the division's order by means of a complaint filed in the Superior Court pursuant to G. L. c. 30A, § 14. Claiming the existence of substantial procedural irregularities in the agency proceedings, the plaintiff moved, pursuant to G. L. c. 30A, § 14(5), for leave to introduce evidence outside the administrative record. A judge of the Superior Court allowed the motion insofar as it requested discovery on the issue, ordering that the plaintiff be given access to all bank records subpoenaed by the division; the division's press releases regarding the case; and any relevant documents exchanged between the hearing officer and the Secretary or enforcement section personnel. He also granted leave for the plaintiff to conduct a deposition of the hearing officer concerning the Secretary's public statements and any ex parte communications about the case.

Following completion of the ordered discovery and further

procedural skirmishes that are unnecessary to detail, the plaintiff's renewed motion to present evidence of procedural irregularities was denied. A judicial review confined to the administrative record was conducted; the plaintiff's motion for judgment on the pleadings was denied; and judgment affirming the division's decision was entered.

2. *The agreements are "securities."* The essence of the plaintiff's appeal is that the arrangements with the investors whereby the investors executed the agreements are akin to ordinary promissory notes, and that the agreements do not constitute "securities" for purposes of the Commonwealth's securities regulation laws. If so, he argues, the division was without jurisdiction to challenge his activities at all, because the requirements he is alleged to have violated apply only to the sale or offering for sale of, or other dealings with respect to, securities. We have little difficulty in concluding that the agreements, despite their demand note features, are securities within the ambit of G. L. c. 110A.

We commence with the definition of "security" set forth in G. L. c. 110A, § 401(*k*):

> "any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

The definition is extremely broad, and obviously does not exclude promissory notes or other instruments that may generate fixed income for the holder. Indeed, "note" is the first instrument that the definition enumerates. "Every note is presumptively a security." *Greenery Sec. Corp.* v. *Commissioner of Rev.*, 58 Mass. App. Ct. 70, 74 (2003). Federal securi-

ties laws have been similarly interpreted. See *Reves* v. *Ernst & Young*, 494 U.S. 56, 67 (1990). Because the language of § 401(*k*)'s definition of security essentially repeats the definition set forth in the Securities Act of 1933 and the Securities Exchange Act of 1934, Federal decisions provide a meaningful, though not conclusive, guide. See *Valley Stream Teachers Fed. Credit Union* v. *Commissioner of Banks*, 376 Mass. 845, 857-858 (1978); *Dinjian* v. *Dinjian*, 22 Mass. App. Ct. 589, 593 (1986).

Demand notes issued by an agricultural cooperative to raise capital for business operations were considered in 1990 by the Supreme Court in *Reves* v. *Ernst & Young, supra.* The notes were uninsured and not otherwise secured. Interest rates varied in accordance with other local interest rates. Declaring that the "fundamental essence" of a security is its character as an investment, see *id.* at 68-69, the Court commenced its analysis with the presumption that the notes were securities. *Id.* at 67. It then examined whether the notes bore a strong resemblance to any of the kinds of notes defined in the statute as not being securities. These included notes such as those given in connection with bank loans, home mortgages, small business loans, and consumer transactions. *Id.* at 65. The Court concluded that the notes were not typical of the exempted financing transactions, but instead reflected investments subject to regulation. *Id.* at 73.

To determine whether a note or other instrument is issued for essentially investment purposes, the Supreme Court considered four factors: specifically, the motivations of the parties in entering the agreement for issuance of the instrument; whether trading in the instrument for investment purposes is contemplated; whether the purchaser of the instrument reasonably views it as an investment opportunity; and whether some regulatory or other risk-reducing feature associated with the instrument exists. *Id.* at 66-67. Of particular importance to the present case is the Court's determination that interest paid on a promissory note may be considered profit for the purpose of deciding whether the note has been issued for investment purposes. *Id.* at 68 n.4. This conclusion was reaffirmed by the Supreme Court as recently as this year when the Court ruled that certain sale-and-leaseback arrangements were investment contracts subject to

Federal securities regulation, holding "that an investment scheme promising a fixed rate of return can be an 'investment contract' and thus a 'security' subject to the federal securities laws." *Securities & Exchange Commn.* v. *Edwards*, 124 S. Ct. 892, 898-899 (2004).

" 'Congress' purpose in enacting the securities laws was to regulate *investments*, in whatever form they are made and by whatever name they are called' " (emphasis in original). *Securities & Exchange Commn.* v. *Edwards*, *supra* at 896, quoting from *Reves* v. *Ernst & Young*, *supra* at 61. We examine the division's determination that the agreements marketed by the plaintiff are investment vehicles, and therefore securities, on the basis of the criteria set forth in *Reves* and applied in *Edwards*. Because these cases represent the most recent and authoritative Federal statements on the subject, and because we are satisfied that they fairly construe the language and purpose of G. L. c. 110A, we need not consider whether the agreements constitute securities under the earlier test of *Securities & Exchange Commn.* v. *W.J. Howey Co.*, 328 U.S. 293, 301 (1946). While the *Howey* analysis has previously governed appellate decisions within Massachusetts, see *Valley Stream Teachers Fed. Credit Union* v. *Commissioner of Banks*, 376 Mass. at 858; *Dinjian* v. *Dinjian*, 22 Mass. App. Ct. at 594, those Massachusetts decisions preceded *Reves*, and we follow the more recent Federal analysis.[6]

The material characteristics of the agreements sold by the plaintiff are not disputed. Given those characteristics, the division correctly determined that the agreements were securities for purposes of G. L. c. 110A. Applying the criteria of *Reves*, the division could permissibly find that the parties entered into the agreements in order to achieve investment goals: the plaintiff wanted to raise money for the operations of ERSS, while the investors sought a higher than market interest rate, with the possibility that conversion would produce significant capital appreciation. The agreements were not isolated promises to pay

[6]By so stating, we do not mean to suggest that the agreements would not have constituted investment contracts under the *Howey* analysis, or that the division erred in its alternative determination that the agreements were subject to regulation on that theory.

in connection with an individual bank or consumer transaction; rather, they were broadly distributed to hundreds of persons over a period of five years, and a market could potentially develop for them. They were marketed and acquired as investment opportunities, and absent regulation, they lacked any risk-reducing factor. Furthermore, the notes were convertible into stock, thus being the equivalent of a "warrant or right to subscribe to or purchase" a security. See G. L. c. 110A, § 401(k). We seek the "essential nature" of these agreements, see *Overnite Transp. Co.* v. *Commissioner of Rev.*, 54 Mass. App. Ct. 180, 186 (2002), and agree with the division and the Superior Court judge that they are plainly investment vehicles subject to regulation as securities under G. L. c. 110A.

3. *Findings were supported by substantial evidence.* The plaintiff challenges the division's findings in various respects on the ground that such findings were not supported by "substantial evidence." The division's decisions are reviewable in accordance with G. L. c. 30A, § 14(7), see G. L. c. 110A, § 411, and its findings must be supported by substantial evidence. "Substantial evidence" is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). In deciding whether agency findings have satisfied this standard, we do not decide questions of credibility or weigh conflicting evidentiary versions, see *School Comm. of Wellesley* v. *Labor Relations Commn.*, 376 Mass. 112, 120 (1978), and we respect the agency's expertise insofar as the drawing of inferences is concerned. See *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals*, 389 Mass. 705, 716 (1983).

We concluded, in part 2, *supra*, that, on largely undisputed facts, the agreements marketed by the plaintiff constituted "securities" as matter of law. We turn now to the separate question whether the division's determination that the plaintiff violated the provisions of G. L. c. 110A with respect to the selling or offering of the agreements is based, as the plaintiff contends, on unsupported findings of fact. We are convinced that the division satisfied the substantial evidence test in this regard.

At the outset, the plaintiff's argument in his principal brief is

not directed at the relationship, or lack thereof, between the evidence and the division's findings. Rather, his argument is that the findings are not supported by substantial evidence because he was prejudiced in various respects by errors in the proceeding before the hearing officer. We treat those contentions in part 4, *infra*. The plaintiff turns in his reply brief to his contention that the evidence actually introduced before the hearing officer was insufficient to support her findings.

However, contrary to the plaintiff's assertions, the record clearly warrants the findings recommended by the hearing officer and adopted by the division. There was evidence that the plaintiff promised investors payment on demand when he knew, or reasonably should have known, that the enterprise for which the capital had been raised was incapable of generating the amount of cash necessary to perform the commitment. He did not inform the investors that the agreements were neither registered nor exempt from registration, nor did he advise them that he himself was not an authorized broker-dealer or agent. Likewise, investors were never told of the plaintiff's personal interest in the business, or of the fact that certain of his personal expenses would be paid from the proceeds of their investments. The plaintiff argues that there was evidence to the contrary with respect to some of these propositions. That may be so; but it was for the hearing officer to decide what to believe, and she was not required to credit the plaintiff's versions or explanations. That the misrepresentations or omissions were material to the investors has to be obvious; put simply, a true statement of the risks associated with the agreements would unquestionably have had a bearing on those investors' willingness to fund the project. The division was not required to demonstrate that the plaintiff had an intent to defraud. See *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 622 (1994). The findings being supported by substantial evidence, the division's determination that the plaintiff had violated G. L. c. 110A was justified.

4. *Other issues.* We deal more briefly with the plaintiff's largely procedural challenges to the decision.

(i) The division acted within its authority in setting aside the consent order and reinstating the administrative complaint. That the plaintiff did not comply with the consent order is undisputed.

In the absence of compliance by February 14, 1997, the terms of the consent order itself rendered it null and void and permitted the division to pursue "all available remedies." The plaintiff's argument that the administrative complaint had been dismissed with prejudice and therefore could not be reinstated is not persuasive; dismissal was clearly contingent upon the plaintiff's commitment to perform, and the consent order provided a remedy in the event of nonperformance. The plaintiff's effort to cast blame on the Secretary for his failure to perform because a press release announced the consent order is unavailing. The plaintiff's commitments were not conditioned on action or forbearance by the Secretary.

(ii) The division was not required to refer the matter to the division of administrative law appeals (DALA) for hearing. Indeed, DALA is not authorized to conduct proceedings on behalf of the division. See G. L. c. 7, § 4H. Furthermore, it is commonplace in administrative practice that cases prosecuted by an agency's enforcement section are decided by that agency's adjudicators, be they the individual or board who head the agency or a separate hearings section. See *D'Amour* v. *Board of Registration in Dentistry*, 409 Mass. 572, 580 (1991). Despite a generous opportunity to make his case that the hearing officer had been compromised, the plaintiff presented no evidence that the hearing officer was affected by her position within the division or that she had otherwise been influenced.

(iii) The hearing officer acted within her discretion in scheduling the hearing, and the plaintiff was not prejudiced thereby. The plaintiff was served with the administrative complaint in December, 1995, and agreed to the consent order in January, 1997. Hearings on the reinstated administrative complaint were conducted in May, 1997. As indicated above, the case turned in large part on whether the agreements were "securities" under G. L. c. 110A, § 401($k$). The plaintiff, an attorney, knew for an extended period that this was the critical issue; had ample time in which to prepare; and in fact defended himself on the issue with witnesses and argument. He attended at least portions of each of the two days on which evidence was presented, and testified at length himself. He was represented by counsel. The hearing officer was within her rights to decline to defer to a

simultaneously conducted bankruptcy proceeding, and the plaintiff's ability to mount a defense was not affected.

(iv) The plaintiff was not entitled to access to the division's investigatory file, see G. L. c. 4, § 7, Twenty-sixth (*f*), having received prior to the hearing a witness list and copies of documents that the division proposed to introduce. See G. L. c. 30A, § 11(4); 950 Code Mass. Regs. § 10.09(b) (2003). He presumably had access to his own bank records and, in any event, was provided with copies pursuant to a Superior Court discovery order. The provisions of G. L. c. 30A, § 11(7), requiring issuance of a proposed decision and an opportunity for comment govern only where "a majority of the officials of the agency who are to render the final decision have neither heard nor read the evidence." That procedure is inapplicable here. The plaintiff's accusation that the hearing officer's recommended decision and the proposed findings and conclusions submitted by the enforcement division are identical, thus suggesting that the hearing officer failed to apply her independent judgment to the evidence, is inaccurate. There are substantial differences between the documents. Even had the hearing officer adopted the proposals verbatim, a practice obviously not recommended, the findings stand if they genuinely reflect the hearing officer's own views and are otherwise supported by substantial evidence. See *First Pennsylvania Mortgage Trust* v. *Dorchester Sav. Bank,* 395 Mass. 614, 622 n.12 (1985); *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. 430, 451 (1997).

*Judgment affirmed.*