SUPERIOR COURT 
 
 BARRY GRAHAM ARMSTRONG v. OFFICE OF THE SECRETARY OF THE COMMONWEALTH SECURITIES DIVISION

 
 Docket:
 2084CV03041-BLS2
 
 
 Dates:
 April 25, 2022
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS
 
 

 
            The Securities Division of the Office of the Secretary of the Commonwealth (the “Division”) imposed sanctions on Barry Graham Armstrong, a registered broker-dealer of securities, for running a misleading radio advertisement. The ad urged listeners to call a toll-free number to get a free fact sheet about Alzheimer’s disease. Armstrong’s goal was to obtain contact information to promote his business of providing financial planning, investment advice, and broker-dealer services. When people called in response to the advertisement, Armstrong’s agents sent them a publicly available Alzheimer’s fact sheet together with material promoting Armstrong’s business.
            Mr. Armstrong contends that the Division’s decision is unlawful.
            The Court disagrees. It concludes that: (i) the decision did not violate Armstrong’s constitutional free speech rights because this bait advertising was misleading commercial speech; (ii) the regulation barring misleading advertisements is not unconstitutionally vague; (iii) the Division permissibly construed and properly applied Massachusetts regulations that govern conduct by broker-dealers; (iv) the Division did not violate Armstrong’s procedural due process rights; and (v) the decision is supported by substantial evidence and is neither arbitrary, capricious, nor an abuse of discretion.
            The Court will therefore deny Armstrong’s motion for judgment on the pleadings, allow the Division’s cross-motion for judgment on the pleadings,[1] and order that final judgment enter affirming the Division’s decision.
 
-------------------------------------
 
[1] Under Superior Court Standing Order 1-96, ¶ 4, an opposition to a motion for judgment on the pleadings in a case seeking judicial review under G.L. c. 30A is deemed to include a cross-motion for judgment on the pleadings affirming the challenged administrative decision.
 
                                                            -1-
 
            1. Factual and Procedural Background. Mr. Armstrong is registered in Massachusetts as a broker-dealer agent for Securities America, Inc. (“SAI”) and as an investment adviser representative for Securities America Advisors. SAI is regulated by the Financial Industry Regulatory Authority (“FINRA”). Armstrong holds various FINRA licenses. He does business through a company called the Armstrong Advisory Group ( “AAG”).
            Armstrong hosts a radio show that addresses business and financial matters. It airs weekdays on stations throughout New England, including on WRKO in Massachusetts. AAG promotes itself primarily through radio advertisements that run during this and other radio programs.
            During July 2014, Armstrong ran a radio advertisement that offered information about Alzheimer’s disease, in order to elicit contact information from people so that Armstrong could send them information about AAG. This ad was aired at least 48 times in Massachusetts. It consisted of two parts.
            In the first part of the ad, Armstrong talked about Alzheimer’s disease, told listeners that “treatments for symptoms are available,” and encouraged listeners to call a toll-free number and request a “free fact sheet.” Armstrong did not identify himself or his business, and did not mention investments or financial advisory services. The text that Armstrong read during this part of the ad is as follows:
Did you know that Alzheimer’s disease is the most common form of dementia? And due to the growth of Alzheimer’s disease, dementia is taking an enormous toll on our society, our spouses, our children, and other family members. Alzheimer’s is not a normal part of aging. However, the greatest risk factor is increasing age.
Get the facts about Alzheimer’s disease with our free fact sheet, available now. Call us today at 866-810-6422 to learn more about Alzheimer’s disease and dementia. Alzheimer’s has no current cure, but treatments for symptoms are available. If you or a loved one has been diagnosed with Alzheimer’s or a related dementia, you’re not alone.
Learn what resources there are to support those affected by the disease. That number again is 866-810-6422.
At that point, a different voice read disclaimer language prepared by SAI; this text was read very quickly. The disclaimer portion of the ad was as follows:
 
                                                            -2-
 
Securities offered through Securities America, Inc., member FINRA/SIPC and advisory services offered through Securities America Advisors, Inc., Barry Armstrong, representative. Armstrong Advisory Group and the Securities America Companies are unaffiliated.
Calls to the number read in this advertisement were answered by a call center that had been retained by AAG. The call center employees would answer each call by saying “Armstrong Advisory Group, Securities America, how may I help you?” If the caller asked for the Alzheimer’s fact sheet, the employee would ask for and record the caller’s name, mailing address, email address, and telephone number, and the fact that they called in response to the Alzheimer’s advertisement. The employee would enter that information into a database and immediately email it to AAG, Armstrong’s company.
            AAG then followed up by mailing to each person who called in response to the Alzheimer’s advertisement a packet containing three things:
o a one-page letter from Barry Armstrong offering financial-planning and investment-management services through AAG, as well as a “free 60-minute consultation with a financial planner;”
o a four-page memorandum from “Cushing & Dolan, P.C., Attorneys at Law” about using Personal Care Contracts to transfer money from a parent to their child without those payments being subject to Medicaid’s five-year look back period—at the bottom of each page, this memo said, “For a free, no obligation financial consultation, contact Armstrong Advisory Group at (800) 393-4001;” and
            o an eight-page Alzheimer’s Disease Fact Sheet that was prepared and published by, and            available for free from, the Alzheimer’s Disease Education & Referral Center of the National Institute on Aging.
Almost eighty Massachusetts residents called in response to Armstrong’s Alzheimer’s ad and received these packets. An AAG employee then called each of these people, and asked whether they would like to set up an appointment with the Armstrong Advisory Group or with an elder law attorney. Two of them agreed to meet with AAG.
            The Division’s Enforcement Section filed an administrative complaint against Armstrong in July 2015. It conducted an evidentiary hearing in this matter in April 2018. The hearing officer issued a recommended decision in June 2020, and the Division adopted it as its Final Order in early December 2020.
 
                                                            -3-
 
            The Division found that the advertisement, together with Armstrong’s subsequent conduct in using personal identifying information from callers seeking an Alzheimer’s’ fact sheet to market AAG’s services, constituted unethical or dishonest conduct by a broker-dealer that violated G.L. c. 110A, § 204(a)(G) and 950 C.M.R. § 12.204(1)(a) and involved the use of deceptive or misleading advertising that violated 950 C.M.R. § 12.204(1)(a)(18) (providing that engaging in “deceptive or misleading” advertising or sales practices is an unethical practice that may result in a fine, censure, or other discipline).
            In addition, the Division found that Armstrong failed to identify himself and his firm in this advertisement, and that as a result he violated FINRA Rule 2210(d). The Division’s regulations provide that broker-dealers may be sanctioned if they fail to comply with any FINRA member conduct rule. See 950 C.M.R. § 12.204(1)(a)(28).
            The Division imposed several sanctions; it ordered Armstrong not to engage in any further conduct that violates G.L. c. 110A or its implementing regulations, formally censured him, and ordered him to pay a $25,000 administrative fine.
            In late December 2020, less than thirty days after the Division issued its final order, Armstrong filed a timely complaint seeking judicial review under G.L. c. 30A, § 14.
2. Analysis. Mr. Armstrong has the burden of proving that the Division’s final order is invalid because it violates some constitutional provision, exceeds the Division’s authority, or is based on an error of law, not supported by substantial evidence, arbitrary or capricious, or an abuse of discretion, or is otherwise unlawful. See generally Duggan v. Board of Reg. in Nursing, 456 Mass. 666, 673 (2010) (applying G.L. c. 30A, § 14(7)). The Court concludes that Armstrong has not met that burden.
            2.1. First Amendment Rights. Mr. Armstrong contends that the Division’s order violated his right to free speech, as guaranteed by the First Amendment to the United States Constitution. The Court disagrees. Armstrong’s Alzheimer’s advertisement was commercial speech, aimed at gathering contacts to promote his financial advisory and broker-dealer business. And the Division reasonably found that the ad, together with Armstrong’s subsequent course of conduct, was misleading. It therefore was not protected by the Free Speech clause of the First Amendment.
 
                                                            -4-
 

            2.1.1. Constitutional Framework. Although “[t]he First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation,” it provides “lesser protection to commercial speech than to other constitutionally guaranteed expression.” Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 561 & 563 (1980). “[T]he government’s legitimate interest in protecting consumers from ‘commercial harms’ explains ‘why commercial speech can be subject to greater governmental regulation than noncommercial speech.’ “ Sorrell v. IMS Health Inc., 564 U.S. 552, 579 (2011), quoting City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 426 (1993).
            Central Hudson established a four-pronged test to determine whether a government restriction on commercial speech is constitutional: (i) was it the speech misleading or did it concern illegal activity; (ii) if not, is the governmental interest in regulating that speech substantial and, if so; (iii) does the challenged regulation directly advance the asserted governmental interest; and (iv) is the regulation no more extensive than necessary to serve that interest. See Bulldog Investors General Partnership v. Secretary of the Commonwealth, 460 Mass. 647, 668 (2011); Central Hudson, 447 U.S. at 566.
            If commercial speech is misleading, or concerns unlawful activity, then “the inquiry ends there: ‘the speech is not protected by the First Amendment.’ ” Wine and Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1, 8 (1st Cir. 2007), quoting Thompson v. Western States Med Ctr., 535 U.S. 357, 367 (2002).
            States may ban “false, deceptive, or misleading commercial speech,” or punish someone for engaging in it, without violating the First Amendment. See Ibanez v. Florida Dept. of Business and Professional Reg., Bd. of Accountancy, 512 U.S. 136, 142 (1994) (“false, deceptive, or misleading commercial speech may be banned”); Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 638 (1985) (“The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, … or that proposes an illegal transaction.”).
            Disciplining a professional subject to State regulation for misleading advertising is therefore lawful, and does not implicate the First Amendment. See, e.g., Barlow v. Mississippi State Bd. of Chiropractic Examiners, 233 So.3d 223, 229–230 (Miss. 2017); Indiana Prof. Licensing Agency v. Atcha, 49 N.E.3d 1054, 1061–1062 (Ill. App. Ct. 2016); Barnett v. Maryland State Board of Dental Examiners, 293 Md. 361, 366–368 (1982).
 
                                                            -5-
 
            2.1.2. Armstrong Engaged in Commercial Speech. Armstrong seems to concede that the advertisement at issue here was commercial speech, even though it discussed Alzheimer’s disease and did not reveal Armstrong’s plan to market financial advisory services. That makes sense.
            Advertisements and other communications may constitute commercial speech even if they address “important public issues.” Bulldog Investors, 460 Mass. at 559, quoting Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 67–68 (1983).
            Advertising aimed at promoting a product or company is commercial speech even if it is framed as a discussion of some matter of public interest. For example, the manufacturer of Trojan-brand condoms engaged in commercial speech when it sent potential customers an informational pamphlet that discussed venereal disease to encourage the purchase and use of condoms generally, without explicitly promoting the manufacturer’s own products. See Bolger, supra, at 62 n.4 & 66–68.
            As another example, a Chicago-area supermarket chain engaged in commercial speech when it ran a print advertisement congratulating Michael Jordan on his induction into the Naismith Memorial Basketball Hall of Fame (located in Springfield, Massachusetts) to promote the supermarket’s brand. See Jordan v. Jewel Food Stores, Inc., 743 F.3d 509, 511–512 & 517–522 (7th Cir. 2014). Though the text of the ad was limited to congratulating Jordan, and the ad did not offer any specific product or services for sale, it was commercial speech because its aim was to promote Jewel’s supermarkets. Id. at 518–520.
            Similarly, Mr. Armstrong engaged in commercial speech when he ran the radio advertisement at issue here, because he was offering a publicly available fact sheet about Alzheimer’s disease to obtain contact information from people that Armstrong then used to promote AAG and try to sell its services.
            2.1.3. Armstrong Engaged in Misleading Commercial Speech. Armstrong insists that his Alzheimer’s advertisement could not be misleading because every statement in the ad was true, and every caller received the Alzheimer’s fact sheet promised in the ad. This argument misses the point.
            An advertisement may be “completely misleading” even though its text is “literally true.” Donaldson v. Read Magazine, 333 U.S. 178, 188 (1948). This may be, for example, “because things are omitted that should be said.” Id.
            The Division reasonably found that Armstrong’s advertisement was misleading, and therefore violated 950 C.M.R. § 12.204(1)(a)(18), because of
 
                                                            -6-
 
what it omitted. Armstrong engaged in a form of bait advertising by offering free information about Alzheimer’s disease to obtain leads on people to whom Armstrong would market financial products or services. The advertisement was the bait that Armstrong used to draw out consumers, who may be concerned that they or a loved one could be suffering from Alzheimer’s disease, so that he could obtain their contact information and use it to pitch AAG’s products and services.
            Bait advertising like this is misleading, even if what is said in the advertisement itself is true, because “the real intention is simply to create a contact with the buyer that allows the seller to switch the consumer to a more profitable sale.  It is the bait, not the switch, that is deceptive. Hence, the deception occurs at the time of the bait advertisement.” Rossman v. Fleet Bank (R.I.) Nat’l Ass’n,  280 F.3d 384, 396 (3d Cir. 2002).
            Armstrong’s Alzheimer’s advertisement was misleading because he did not mention securities or financial planning in the substantive text, and the ad did not disclose that Armstrong planned to contact people who responded and try to sell them securities or other financial products. See Department of Enforcement v. KCD Financial, Inc., FINRA Disciplinary Proceeding No. 2011025851501, 2015 WL 4549723, at *1 & *7 (June 16, 2015) (imposing $40,000 fine on FINRA member firm that ran advertisements offering to help consumers locate certificates of deposit with above-market rates, as a marketing tool to identify potential customers and try to sell other financial products to them, without revealing their true purpose).
            The Division reasonably found that the disclaimer at the end of the advertisement did not cure the problem because it was read so quickly that it was hard to understand, and because there was no apparent connection between the offer of an Alzheimer’s fact sheet in the body of the ad and the rapid-fire references to securities, Securities America, Inc., advisory services, Securities America Advisors, Inc., Barry Armstrong, Armstrong Advisory Group, and the Securities America Companies in the disclaimer.
            In sum, that the advertisement was misleading commercial speech means that Armstrong’s invocation of the First Amendment is unavailing.
            2.2. Vagueness. Armstrong contends that the regulation that bars broker- dealers from engaging in deceptive or misleading advertisements, 950 C.M.R.
 
                                                            -7-
 
§ 12.204(1)(a)(18), is so vague that applying it to Armstrong violates his constitutional due process rights. This argument is also without merit.
            A statute or regulation “is void for vagueness if persons of common intelligence must necessarily guess at its meaning and differ as to its application ... or if it subjects people to an unascertainable standard.” Commonwealth v.  Cassidy, 479 Mass. 527, 538 (2018), quoting Chief of Police of Worcester v. Holden, 470 Mass. 845, 854 (2015). “The test is whether the standard is comprehensible to persons of common intelligence, not whether it may be imprecise.” Grocery Mfrs. of Am., Inc. v. Department of Pub. Health, 379 Mass. 70, 84 (1979).
            A regulation may not be invalidated as unconstitutionally vague “where the challenged provisions are merely general in nature, requiring a person to conform his or her conduct ‘to an imprecise but comprehensible normative standard.’ Rather, the doctrine is applied to strike down statutes in which ‘no standard of conduct is specified at all.’ ” Johnson v. Martignetti, 374 Mass. 784, 788 (1978), quoting Coates v. Cincinnati, 402 U.S. 611, 614 (1971). Thus, a regulation is sufficiently precise to pass constitutional muster “if it ‘conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.’ ” Commonwealth v. McGhee, 472 Mass. 405, 414 (2015), quoting Commonwealth v. Adams, 389 Mass. 265, 270 (1983).
            The Supreme Judicial Court has rejected vagueness challenges to regulations and statutes with far less precise standards. See Cherubino v. Board of Registration of Chiropractors, 403 Mass. 350, 356–358 (1988) (regulation permitting discipline of chiropractors for “over utilization of practice,” defined as “practice excessive in quality or amount to the needs of the patient”); Gurry v. Board of Public Accountancy, 394 Mass. 118, 126128 (1985) (regulation permitting discipline of certified public accountants who commit “any act discreditable to the profession”); see also Holden, 470 Mass. at 854–856 (firearm licensing statute requiring that applicant be a “suitable person,” with no definition of term).
            If neither the regulation barring “discreditable” conduct in Curry nor the other laws upheld in these cases were too vague, then neither is the advertising regulation at issue here.
            2.3. Construing the Regulation. The Court must defer to the Division’s reasonable interpretation of its own regulations. See Hurst v. State Ballot Law Comm’n, 428 Mass. 116, 120 (1998); Warcewicz v. Department of Envtl. Protection,
 
                                                            -8-
 
410 Mass. 548, 550 (1991). A court may not overturn an agency’s interpretation of its own regulation unless that “interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious.” Peterborough Oil Co., LLC v. Department of Envtl. Prot., 474 Mass. 443, 452 (2016), quoting TBI, Inc. v. Board of Health of North Andover, 431 Mass. 9, 17 (2000). A party “challenging an agency’s interpretation of its own rules has a ‘formidable burden’ of showing that the interpretation is not rational.” Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 228 (2010). Armstrong has not met that burden here.
            Armstrong asserts that the Division misconstrued and misapplied its own regulation because the regulatory ban on deceptive or misleading advertising may only be applied to advertising the sale of securities and only where an ad is “objectively and demonstrably false,” the advertiser intended to mislead consumers, and consumers suffered actual harm. None of these arguments holds water.
            First, the regulation applies to “any advertising or sales presentation” by a broker-dealer that is either “deceptive or misleading.” See 950 C.M.R. § 12.204(1)(a)(18). The regulation contains no language limiting its application to advertisements to sell securities. The Court may not read into a statute or regulation a provision that the Legislature or agency "did not see fit to put there, whether the omission came from inadvertence or of set purpose.” Doe v. Board of Reg. in Med., 485 Mass. 554, 562 (2020), quoting General Elec. Co. v. Dept. of Envtl. Prot., 429 Mass. 798, 803 (1999). Though Armstrong did not mention securities during the body of this advertisement, the ad was a marketing tool for his securities and financial planning business, and thus the regulation applies to it. See KCD Financial, 2015 WL 4549723, at *1–*2.
            Second, as discussed above, an advertisement can be—and this advertisement was—misleading even though it was literally true. Nothing in the regulation limits its application to advertisements that are false. Cf. Commonwealth v. Morse, 468 Mass. 360, 370–371 (2014) (one may violate statute making it a crime to mislead police officer in order to interfere with criminal investigation or proceeding by making a false statement or by intentionally omitting information and thereby causing statement to be misleading).
            Third, the Division reasonably construed this regulation as not requiring proof of either intent to deceive or actual harm to consumers. See, e.g., Silva, 61 amas. App. Ct. at 359 (Division not required to show that individual “had an intent to defraud” in order to prove that plaintiff sold securities by means of
 
                                                            -9-
 
misleading statements in violation of G.L. c. 110A, § 101); Cumis Ins. Society, Inc. v. BJ’s Wholesale Club, Inc., 455 Mass. 458, 471 (2009) (at common law, “negligent misrepresentation does not require an intent to deceive or actual knowledge that a statement is false”); Langlitz v. Board of Reg. of Chiropractors, 396 Mass. 374, 381–382 (1985) (lawful to discipline chiropractor for deceptive advertising, without any showing that “members of the public had actually been deceived”). Armstrong cites no authority to the contrary.
            2.4. Procedural Due Process. Mr. Armstrong contends that the Division violated his constitutional right to procedural due process by not considering evidence favorable to Armstrong and by not providing a neutral decision maker. Neither argument has merit.
            First, Armstrong complains that the Division’s decision does not address evidence that the Alzheimer’s advertisement was factually accurate, callers received the fact sheet they were promised, and no caller felt misled. For the reasons discussed above, however, none of this evidence was relevant. The Division could reasonably find that the ad was misleading even though it contained no false statements, the Alzheimer’s fact sheet was included with Armstrong’s marketing material, and no caller was upset by Armstrong’s bait advertising.
            It did not violate Armstrong’s due process rights for the hearing officer not to spend time analyzing evidence that makes no difference. “[D]ue process does not require the opportunity to prove a fact that is not material to the State’s statutory [or regulatory] scheme.” Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 4 (2003) (where State publicly discloses registry information of all sex offenders, whether dangerous or not, failure to consider evidence that respond was not currently dangerous did not violate due process); see also Hadley v. Buss, 385 Fed.Appx. 600, 603 (7th Cir. 2010) (hearing board did not violate due process in prison disciplinary proceeding by not considering evidence that was irrelevant).
            Second, Armstrong asserts that the hearing officer who wrote the Recommendation for Final Order and the acting director who adopted the Final Order could not have been neutral because they were employed by the Division and therefore had “pecuniary interests in the outcome of Armstrong’s trial.” Armstrong presents no evidence of actual bias. Instead, he argues—without citing any supporting authority—that the requirements of due process always
 
                                                            -10-
 
bar government agencies from allowing any employee to decide an adjud- icatory proceeding.
            This argument is just plain wrong. See Silva v. Securities Division, 61 Mass. App. Ct. 350, 360 (2004). “[I]t is commonplace in administrative practice that cases prosecute by an agency’s enforcement section are decided by that agency’s adjudicators, be they the individual or board who head the agency or a separate hearings section.” Id. The facts that the Division has both an investigative and adjudicatory function, and that recommended and final decisions were made by agency employees, “does not violate due process.” Kippenberger v. Board of Reg. in Veterinary Med., 448 Mass. 1035, 1036 (2007); accord, e.g., D’Amour v. Board of Reg. in Dentistry, 409 Mass. 572, 579–580 (1991); Craven v. State Ethics Comm’n, 390 Mass. 191, 198–199 (1983); Raymond v. Board of Reg. in Medicine, 387 Mass. 708, 717 (1982).
            2.5. Evidentiary Basis and Exercise of Discretion.
            2.5.1. Sufficiency of the Evidence. Armstrong’s assertion that the Division’s final order is not support by substantial evidence is unconvincing.
            “Substantial evidence,” as defined by statute, is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L. c. 30A, § 1(6).[2] “Under the substantial evidence test, a reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [agency].” Hotchkiss v. State Racing Comm’n, 45 Mass. App. Ct. 684, 696 (1998), quoting Pyramid Co. of Hadley v. Architectural Barriers Bd., 403 Mass. 126, 130 (1988). This standard of review is “highly deferential to the agency.” Friends and Fishers of Edgartown Great Pond, Inc. v. Dept. of Envtl. Protection, 446 Mass. 830, 836 (2006).
            For the reasons discussed above, the undisputed facts about what Armstrong said and did provide substantial evidence that he used a misleading
 
-------------------------------------
 
[2] There is generally no need to consider the “arbitrary or capricious” standard separately. “Where there is substantial evidence in the record to support the [agency’s] decision,” then “it was not arbitrary or capricious as matter of law.” Cherubino v. Board of Reg. of Chiropractors, 403 Mass. 350, 359 (1988); accord Hotchkiss v. State Racing Comm’n, 45 Mass. App. Ct. 684, 688 n.5 (1998) (“a decision that is supported by substantial evidence cannot be arbitrary and capricious”).
 
                                                            -11-
 
advertisement to generate sales leads, and failed properly to identify himself or his firm in the advertisement.
            2.5.2. Failure to Address Certain Evidence. In a repeat of one of his due process arguments, Armstrong contends that the Division’s decision was nonetheless arbitrary and capricious because it ignored evidence that the Alzheimer’s advertisement was truthful, that listeners who called in received the fact she that had been advertised, and that the only member of the public who testified said that he heard the ad, was happy with what he received, and did not feel that he had been deceived.
            An agency decision is arbitrary if it reaches a conclusion without considering material information or issues. See Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 622 (2010) (since offender was 61 years old at time of classification, it was arbitrary and capricious for Board to classify offender’s risk of re-offense and degree of dangerousness without considering record evidence “concerning the effect of age on recidivism”); Allen v. Boston Redevelopment Auth., 450 Mass. 242, 256–257 (2007) (where Secretary of Environmental Affairs had ordered developer of facility to study dangerous diseases and toxins to analyze worst case scenarios, and environmental impact report failed to evaluate likely damage from release of contagious pathogen, approval of EIR was arbitrary and capricious).
            As discussed above, however, none of the evidence that Armstrong says was ignored was material. To the contrary, whether the ad was literally truthful, whether callers received the Alzheimer’s fact sheet, and whether any consumer was harmed has no bearing on whether Armstrong’s bait advertising was misleading. It is neither arbitrary nor capricious for an agency not to address evidence that is irrelevant. Cf. Craft Beer Guild, LLC v. Alcoholic Bev. Control Comm’n, 481 Mass. 506, 524 (2019)
            2.5.3. Crediting the Enforcement Section’s Expert. Armstrong also argues that the presiding officer committed reversible error by crediting the testimony of the Enforcement Section’s expert witness, on the ground that the witness was purportedly not qualified, their testimony would not have been admissible in court, and they offered opinion on the ultimate issues in the case. These arguments all fail.
            The Division was free to credit or disregard expert testimony as it deemed appropriate. See Town of Brookline v. Alston, 487 Mass. 278, 305 (2021). As noted
 
                                                            -12-
 
above, the Court may not overturn the Division’s credibility choices. See, e.g.,
Pyramid Co. of Hadley, 403 Mass. at 130.
            The assertion that this witness’s testimony would not have been admissible in court is beside the point. “In an adjudicatory proceeding under G.L. c. 30A, an agency ‘need not observe the rules of evidence observed by courts.’ ” Massachusetts Elec. Co. v. Dept. of Pub. Utils., 469 Mass. 553, 573 (2014), quoting G.L. c. 30A, § 11(2).
            The further assertion that the witness offered an opinion on the ultimate issue in the case is also inapposite. Expert testimony is admissible whenever it will help the decisionmaker resolve the case, even if it touches on the ultimate issues in the case. See, e.g., Commonwealth v. Henley, 488 Mass. 95 127 (2021).
            In any case, expert testimony is not required for a regulatory authority to determine whether an advertisement is misleading. See  Langlitz,  396 Mass.  at 381. The other evidence presented at the hearing, in particular the undisputed evidence about what Armstrong said and did, was sufficient without any expert testimony to support the Division’s final decision.
            2.5.4. Sanctions Imposed. To the extent that Armstrong contends that the Division should have imposed less severe sanctions, that argument is also unavailing. The Court has no power to vacate or modify a lawful sanction. If a statutory or regulatory violation is established, and the agency has the power to impose a sanction, the agency “has discretion in determining the appropriate sanction” and a court should “not interfere with the agency’s imposition of a penalty except in the most extraordinary circumstances.” Thomann v. Board of Reg. of R.E. Brokers and Salesman, 481 Mass. 1006, 1011-1012 (2018).
ORDER
            Plaintiff’s motion for judgment on the pleadings is denied. Defendant’s cross- motion for judgment on the pleadings is allowed. Final judgment shall enter affirming the final order of the Securities Division of the Office of the Secretary of the Commonwealth that is dated December 3, 2020, and imposes sanctions on Barry Graham Armstrong.
 
Kenneth W. Salinger Justice of the Superior Court
 
April 25, 2022
 
                                                            -13-
 
xxz